**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | | |
|---|---|---|
| KEVIN T. BALDWIN, | : | **CIV. NO. 18-16213 (RMB)** |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| OFFICER T. BROWN *et al.*, | : | |
| | : | |
| Defendants | : | |

**BUMB, DISTRICT JUDGE**

Plaintiff Kevin T. Baldwin, a prisoner confined in the Federal Detention Center in Philadelphia ("FDC Philadelphia"), and formerly confined in the Federal Correctional Institution in Fort Dix, New Jersey ("FCI Fort Dix") brings this civil rights action under 42 U.S.C. § 1983. (Compl., ECF No. 1.) Plaintiff filed an application to proceed *in forma pauperis*. ("IFP") (ECF Nos. 1-1 at 23, 1-2.) On January 18, 2018, Plaintiff's inmate trust account had a balance of $1500.54. (ECF No. 1-2 at 23.) Plaintiff has sufficient funds to pay the $400.00 filing fee[1] for this action. The Court denies Plaintiff's IFP application and will administratively terminate this action, subject to reopening if Plaintiff pays the $400 fee.

---

[1] Of the $400 fee, $50 is an administrative fee.

When a prisoner pays the filing fee for a civil action regarding prison conditions and seeks redress from a governmental entity, officer or employee of a governmental entity, 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c)(1) require courts to review the complaint and *sua sponte* dismiss any claims that are (1) frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief against a defendant who is immune from such relief. For the reasons discussed below, if Plaintiff pays the filing fee and reopens this action, the Court would proceed the Complaint in part and dismiss it in part.[2]

I.    *Sua Sponte* Dismissal

Courts must liberally construe pleadings that are filed *pro se*. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Thus, "a *pro se* complaint, however inartfully pleaded, must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" Id. (internal quotation marks omitted). "Court personnel reviewing *pro se* pleadings are charged with the responsibility of deciphering why the submission was filed, what the litigant is seeking, and what claims she may be making." See Higgs v. Atty. Gen. of the

---

[2] Conclusive screening is reserved until the filing fee is paid. See Izquierdo v. New Jersey, 532 F. App'x 71, 73 (3d Cir. 2013) (district court should address IFP application prior to conclusive screening of complaint under 28 U.S.C. § 1915(e)(2)).

U.S., 655 F.3d 333, 339-40 (3d Cir. 2011) (quoting Jonathan D. Rosenbloom, Exploring Methods to Improve Management and Fairness in Pro Se Cases: A Study of the Pro Se Docket in the Southern District of New York, 30 Fordham Urb. L.J. 305, 308 (2002)).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556.) Legal conclusions, together with threadbare recitals of the elements of a cause of action, do not suffice to state a claim. Id.

Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. If a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice but must permit the

amendment. <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103, 108 (3d Cir. 2002).

## II. DISCUSSION

### A. The Complaint

Plaintiff alleges the following facts in his Complaint, accepted as true for purposes of screening pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c)(1). Plaintiff was incarcerated at FCI Fort Dix when the following events took place. (Compl., ECF No. 1, ¶III.4.) On January 20, 2018, Officer T. Brown pulled Plaintiff out of his bed and repeatedly punched Plaintiff in the face, hit him in the right side of the head with a flashlight, and choked Plaintiff until he lost consciousness, in front of ten inmate witnesses. (<u>Id.</u>, ¶V.17-20.) Photographs and video were taken of Plaintiff's injuries in Health Services, where P.A. Chigozie examined Plaintiff. (<u>Id.</u>, ¶¶21-22.) Plaintiff was placed in segregated confinement "without proper adequate medical care." (<u>Id.</u>, ¶23.)

On January 21, and again on January 23, 2018, Plaintiff sent medical requests to P.A. Chigozie, complaining of extreme pain in the head and face and blurry vision. (<u>Id.</u>, ¶¶24.) Plaintiff did not receive a response. (<u>Id.</u>) Plaintiff was not taken to Health Services until January 25, 2018, at which time his head was x-rayed. (<u>Id.</u>, ¶26.) On January 26, 2018, Plaintiff told Officer

4

Evans and G. Martin that he needed medical attention for extreme head and face pain with numbness. (Id., ¶¶27-30.) That same day, Plaintiff told Dr. Turner that he felt like his head was going to explode. (Compl., ECF No.1, ¶V.31.) Dr. Turner told Plaintiff he would be taken to "outside medical" but he would have to wait. (Id.)

On January 29, 2018, Plaintiff told Captain Frazier he was in in excruciating pain on the right side of his head and asked for medical care. (Id., ¶32.) Captain Frazier told Plaintiff to be patient. (Id.)

On January 30, 2018, Plaintiff told Officer Evans that he could not take the pain any longer. (Id., ¶33.) Officer Evans did not contact the medical department and instead told Plaintiff "call me when you die." (Id.) Later that day, Plaintiff told Lieutenant Tucker he was in pain, and Tucker said she would notify "Medical" but "Medical" never came. (Id., ¶34.) The same day, Plaintiff told A.W. Smith that he needed "outside medical care." (Id., ¶35.) Plaintiff also complained to E. Fletcher about his head and face pain and numbness. (Id., ¶36.) Fletcher made caustic remarks about Plaintiff's request for medical attention. (Id.)

On January 31, 2018, Plaintiff was examined by Fort Dix Health Services staff members and then escorted to Robert Wood Johnson Hospital for a CT scan. (Id., ¶¶37, 38.) Dr. Gojaniuk diagnosed

Plaintiff with Post-Concussion Syndrome and hypertension, and prescribed medication. (Compl., ECF No. 1, ¶¶V.38-39.)

On February 2, 2018, Plaintiff told G. Martin that he was still in pain and he had not received the medication prescribed by Dr. Gojaniuk for Post-Concussion Syndrome. (Compl., ECF No. 1, ¶V.40.) Martin walked away. (Id.) The next day, Martin told Plaintiff he had contacted Robert Wood Johnson Hospital but they were giving him the run around. (Id., ¶41.) On February 4, 2018, Plaintiff told Captain Perez that he had not received his medication and that he was dizzy and his vision was blurry. (Id., ¶42.) Perez said he would contact Health Services. (Id.) Later that day, Officer Evans refused to deliver Plaintiff's request to Dr. Turner. (Id., ¶43.)

On February 5, 2018, Plaintiff gave Lt. Tucker a medical request form, seeking medical care from Dr. Turner. (Id., ¶¶44-45.) Tucker confirmed that someone from Health Services would see him. (Id., ¶45.) Plaintiff did not see Dr. Turner until the next day, and Plaintiff received the medication prescribed by Dr. Gojaniuk. (Id., ¶46.) On February 7, 2018, Plaintiff was examined by Dr. Feignbutz, who prescribed sunglasses for Plaintiff's blurry vision and a topical NSAID for his eyelid discomfort. (Id., ¶48.)

On February 22, 2018, Plaintiff complained to G. Martin that his symptoms had worsened and no one had responded to his request

forms. (Compl.,, ECF No.1, ¶V.49.) Martin told Plaintiff that Dr. Turner had his request forms and was trying to figure out what to do. (Id.) The following day, Plaintiff complained to G. Martin that he had not received the eye medication and sunglasses prescribed by Dr. Feignbutz. (Id., ¶50.) Plaintiff received the sunglasses on February 27, 2018. (Id., ¶51.)

On March 1, 2018, Plaintiff requested the eye drops Dr. Feignbutz had prescribed, and he received the eye drops the following day. (Id., ¶¶52, 54.) Plaintiff complained about his pain to Captain Frazier on March 1 and again on March 8, 2018. (Id., ¶¶53, 56.) Captain Frazier told him he had to wait. (Id.) In the meantime, on March 2 and March 8, Plaintiff sent Dr. Turner requests for outside medical treatment due to pain and numbness in his head and face. (Id., ¶¶55, 57.)

On March 26, 2018, Plaintiff attended a neurological evaluation at St. Francis Center, and Dr. Taboda[3] diagnosed Post-Concussion Syndrome and hypertension and recommended an EEG and brain MRI. (Id., 57.) On March 27, 2018, Dr. Turner prescribed medication, which Plaintiff was required to take although he did not know what it was. (Id., ¶58.)

---

[3] Plaintiff spells "Taboda" in several different ways throughout the Complaint. For the sake of consistency, the Court will use the spelling "Taboda."

On March 29, 2018, Officer Solan escorted Plaintiff to the shower and left. (Compl., ECF No. 1, ¶V.59.) Officer Meredith then approached Plaintiff and confiscated his clothes. (Id., ¶60.) Meredith cajoled Plaintiff to "Head Butt me so I can whip your ass." (Id.) He called Plaintiff a snitch and said he complained too much. (Id., ¶60.) Meredith further stated, "you want a BP-9? My father works at the region" and "You are afraid to return to the compound." (Id.) Plaintiff complained about Meredith's comments. (Id., ¶61.) He requested to speak to A.W. Grissom, Assistant Warden. (Id., ¶¶III.12, V.61.)

On April 16, 2018, Plaintiff complained to Captain Frazier that Frazier, Lt. Tucker and Ward were violating Plaintiff's First Amendment rights by confiscating "material sent from publications." (Id., ¶62.)

On April 25, 2018, Plaintiff asked Health Services Staff why he had not received his eye medication prescribed on March 12, 2018. (Id., ¶63.) Plaintiff received the medication the next day. (Id.)

On April 27, 2018, Officer Giordano threatened to get Officer T. Brown to take Plaintiff's prescribed sunglasses from him. (Id.) Plaintiff complained about Officer Giordano to A.W. Grissom and A.W. Kodger. (Id., ¶64.) Three days later, Giordano falsified a charge of Code 203, Threatening Bodily Harm, against Plaintiff in

retaliation for Plaintiff reporting Giardano's misconduct on April 27, 2018. (Compl., ECF No. 1, ¶V.65A.) On June 20, 2018, this charge was reduced to Code 312, Insolence Towards Staff. (Id., ¶79A.) On October 5, 2018, the Northeast Regional Office remanded Plaintiff's appeal of the Insolence Towards Staff charge for further review. (Id., ¶85A.)

On April 30, 2018, Lt. Tucker, Officer Brandon and Officer Giordano searched Plaintiff's cell and "trashed" his legal mail in retaliation for Plaintiff filing grievances against Giordano, Officer Meredith and Officer T. Brown. (Id., ¶65.) Plaintiff's cell was searched four times in seven days in retaliation for Plaintiff being assaulted by Officer T. Brown. (Id.) Lt. Tucker "shook down" Plaintiff's cell twice in three days. (Id., ¶77.)

Plaintiff complained of severe head pain to G. Martin on May 4 and 5 and requested that Dr. Turner order outside medical attention. (Id., ¶¶70-71.) Plaintiff was taken to Saint Francis Center for an EEG on May 8, 2018. (Id., ¶72.) Upon his return to Fort Dix that day, he was taken to the SHU without a medical check-up. (Id.)

On May 16, 2018, Plaintiff submitted a medical request to Health Administrator J. Wilk, complaining of head pain, dizziness and blurry vision. (Id., ¶75.) Plaintiff had an MRI later that day. (Id., ¶76.)

Plaintiff was transferred to FDC Philadelphia on May 17, 2018. (Compl., ECF No. 1, ¶V.78.) Plaintiff requested medical attention on May 19, 2018. (Id., ¶79.) On August 3, 2018, Plaintiff was taken to Saint Francis Center, were Dr. Taboda again diagnosed "Chronic Post-Concussion, HTN, and Depression." (Id., ¶81.) Dr. Taboda also recommended a cervical MRI. (Id.) Plaintiff underwent the cervical MRI on September 26, 2018, and it showed disc bulging and stenosis. (Id., ¶¶82-85.) Dr. Taboda prescribed Atorvastatin, Propranolol, Lisinopril and Sertraline "due to Plaintiff's brain and spinal injury." (Id., ¶87.) Plaintiff continues to suffer head, neck, eye and face pain, and he feels confused, unfocused and dizzy, with blurry vision and stagnant speech and thought processes. (Id., ¶¶88-97.)

On August 1, 2018, Plaintiff had a disciplinary hearing at FDC Philadelphia regarding charges against Plaintiff arising out of the alleged assault by Officer T. Brown. (Id., ¶80.) Discipline Hearing Officer ("DHO") J. Potter refused to permit Plaintiff's ten inmate eye witnesses to testify about the assault. (Id.) On October 12, 2018, Plaintiff received a response to his appeal of the August 1, 2018 DHO decision finding Plaintiff guilty of violating Code 224 "Assaulting Any Person" and Code 108, Possession of a Hazardous Tool, and partially granting the appeal. (Id., ¶86.)

Plaintiff attached the response to his appeal of the DHO decision

to the Complaint. The response states, in relevant part:

> Inmate Baldwin appealed the August 1, 2018
> decision of the Discipline Hearing Officer
> (DHO) at FDC Philadelphia finding he committed
> the prohibited acts of Assaulting Any Person,
> Code 224, and Possession of a Hazardous Tool,
> Code 108, Incident Report No. 3079879. He
> denies committing the prohibited acts, and
> requests that his sanctions be removed.
>
> As of the date of this memorandum, this office
> [BOP Northeast Regional Office] has not
> received a copy of the disciplinary paperwork.
> Thus, a thorough review cannot be conducted.
> Accordingly, this disciplinary action is being
> remanded for institution staff to conduct a
> thorough search for the disciplinary record.
> If the entire record cannot be located, please
> contact the Unit Team and request the Unit
> Team advise the inmate that he may submit a
> new Administrative Remedy Appeal.
>
> The reprocessing of this disciplinary action
> should not exceed 30 days from the date of
> this memorandum.

(Compl., Ex. 16, ECF No. 1-1 at 21-22.)

    B.    Analysis

A plaintiff may assert a cause of action under 42 U.S.C. §

1983 for violations of his constitutional rights. Section 1983

provides, in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of
> any State or Territory ... subjects, or causes
> to be subjected, any citizen of the United
> States or other person within the jurisdiction
> thereof to the deprivation of any rights,

> privileges, or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured in an action at law, suit in
> equity, or other proper proceeding for
> redress....

To state a claim for relief under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States, and that the constitutional deprivation was caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1998); Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

### 1. Official Capacity Claims

Plaintiff sues all of the defendants in their individual capacities but he also sues Health Service Administrator J. Wilk, Assistant Warden Grissom, Warden D. Ortiz, and Discipline Hearing Officer ("DHO") J. Potter in their official capacities. "[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." Kentucky v. Graham, 473 U.S. 159, 169 (1985)). "This bar remains in effect when State officials are sued for damages in their official capacity ... because … a judgment against a public servant in his official capacity imposes liability on the entity that he represents. Id. (internal quotations and citations omitted.)

However, Plaintiff may maintain § 1983 official capacity claims against these defendants for prospective injunctive relief

"if there is evidence of ongoing violations of federal law and the injunction will afford a plaintiff prospective relief from the illegal state action." <u>Nelson v. Com. of Pennsylvania Dep't of Pub. Welfare</u>, 244 F. Supp. 2d 382, 387 (E.D. Pa. 2002) (citing Alden, 527 U.S. 706, 757 (1999); <u>Seminole Tribe v. Florida</u>, 517 U.S. 44, 73 (1996); <u>Ex parte Young</u>, 209 U.S. 123, 159-6 (1908)). Plaintiff requests such injunctive relief. (Compl., Relief Requested, ECF No. 1 at 23-24.)

> ### 2. Eighth Amendment Excessive Force Claim against Officer T. Brown

If Plaintiff reopens this action, this claim would be permitted to proceed. However, the Court reserves the issue of whether the Complaint raises a <u>Bivens</u> claim in a new context and, therefore, requires a special factors analysis before creating an implied <u>Bivens</u> remedy. <u>See</u> <u>Ziglar v. Abassi</u>, 137 S.Ct. 1843 (2017).

> ### 3. Assault and Battery under New Jersey State Law against Officer T. Brown

The New Jersey Tort Claims Act, § 59:8-8, requires "a complaining party to give a public entity notice of '[a] claim relating to a cause of action for death or for injury or damage to person or to property' against a public entity or *public employee*." <u>Velez v. City of Jersey City</u>, 850 A.2d 1238, 1244 (N.J. 2004) (emphasis in original). This requirement extends to injuries

resulting from intentional torts, including assault and battery. <u>Velez</u>, 850 A.2d at 1245. N.J.S.A. § 59:8-8 further provides that

> The claimant shall be forever barred from recovering against a public entity or public employee if:
>
>> a. The claimant failed to file the claim with the public entity within 90 days of accrual of the claim except as otherwise provided in N.J.S.59:8-9; or
>>
>> b. Two years have elapsed since the accrual of the claim; …

Plaintiff has not pled that he met the notice requirement of N.J.S.A. § 59:8-8. Two years have elapsed since the alleged assault and battery occurred. Therefore, the Court, upon screening under 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c)(1) would dismiss this claim without prejudice. Plaintiff could cure this defect by filing an amended complaint, if he can allege facts to establish that he met the notice requirement of N.J.S.A. § 59:8-8 prior to bringing the claim.

4. Eighth Amendment Failure to Protect Claims against Defendants Ortiz and Grissom

For an Eighth Amendment Claim "based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994) (citing <u>Helling v. McKinney</u>, 509 U.S. 25, 35 (1993)). For liability, the defendant must exhibit deliberate

14

indifference to inmate health or safety. <u>Farmer</u>, 511 U.S. at 834. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id.</u> at 837.

Plaintiff seeks declaratory judgment that Grissom and Ortiz "fail[ed] to take action to curb physical abuse of inmates" in violation of the Eighth Amendment. (Compl., Relief Requested, ECF No. 1 at 23.) Plaintiff has not alleged any facts suggesting that Ortiz or Grissom knew Plaintiff was at risk of being attacked by Officer T. Brown and did nothing to prevent it from happening. Upon conclusive screening under 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c)(1), the Court would dismiss these claims without prejudice.

> 5. Eighth Amendment Deliberate Indifference to Plaintiff's Medical Needs Claim against Defendants Chigozie, Martin, Fletcher, Turner, Wilk, Tucker, Evans, Frazier and Ortiz for not providing Plaintiff with medical treatment from January 20, 2018 through January 30, 2018

Plaintiff alleges in the Complaint that Officer T. Brown punched him in the face, hit him in the head with a flashlight and choked him. (Compl., ECF No. 1, ¶23.) He was placed in segregated confinement "without proper adequate medical care." (<u>Id.</u>) The allegation that the medical care was not proper or adequate suggests that Plaintiff received medical care before he was placed

in segregated confinement but that he disagreed with the treatment provided. Plaintiff also alleges that he had a head x-ray on January 25, 2018. His claim appears to be that he was not provided medical treatment outside the prison sooner than January 31, 2018.

The Court also construes the Complaint to allege that Plaintiff did not receive adequate medical care after January 30, 2018. Plaintiff describes a number of requests for medical care that he made to Defendants Chigozie, Martin, Fletcher, Turner, Wilk, Tucker, Evans and Frazier, and that he was not satisfied with the responses he received. The facts alleged in the Complaint indicate that Plaintiff received medical care with only short delays from his many requests for treatment. Plaintiff received the following medical treatment:

- head x-ray on January 25, 2018;

- CT scan at Robert Wood Johnson Hospital, evaluation and treatment by Dr. Gojaniuk on January 31, 2018;

- examination and treatment by Dr. Feignbutz on February 7, 2018;

- neurological evaluation at St. Francis Center on March 26, 2018, and Dr. Taboda diagnosed Post-Concussion Syndrome and hypertension and recommended an EEG and brain MRI;

- Dr. Turner prescribed medication on March 27, 2018;

- EEG at Saint Francis Center on May 8, 2018;

- brain MRI on May 16, 2018;

- follow up with Dr. Taboda on August 3, 2018;

· cervical MRI on September 26, 2018 and prescribed
medications.

"Only 'unnecessary and wanton infliction of pain' or
'deliberate indifference to the serious medical needs' of
prisoners are sufficiently egregious to rise to the level of a
constitutional violation." Spruill v. Gillis, 372 F.3d 218, 235
(3d Cir. 2004) (quoting White v. Napoleon, 897 F.2d 103, 108-09
(3d Cir. 1990) (quoting Estelle v. Gamble, 429 U.S. 97, 10 (1976)
(quoting Gregg v. Georgia, 428 U.S. 153 (1976)). Allegations of
malpractice or disagreement as to the proper medical treatment are
insufficient to establish a constitutional violation. Id.

Deliberate indifference to serious medical needs in violation
of the Eighth Amendment's ban on cruel and unusual punishment may
be shown where a medical professional intentionally inflicts pain
on a prisoner or where a prison authority denies a reasonable
request for medical treatment, exposing an inmate to undue
suffering or threat of tangible residual injury or "where
'knowledge of the need for medical care [is accompanied by the]
... intentional refusal to provide that care.'" Spruill, 372 F.3d
at 235 (quoting Ancata v. Prison Health Servs., 769 F.2d 700, 704
(11th Cir. 1985) (alterations in original)). Delay in medical care
amounts to deliberate indifference only when the delay is for non-

medical reasons and the treatment is necessary. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993).

Non-medical prison officials are not deliberately indifferent when they fail to respond to medical complaints of a prisoner who was already being treated by the prison doctor. Durmer, 991 F.2d at 69. Prison administrators who handle inmate grievances are not deliberately indifferent for failing to respond to complaints about medical care unless they know or have reason to know that prison healthcare providers are mistreating or not treating a prisoner. Fantone v. Herbik, 528 F. App'x 123, 128 (3d Cir. 2013) (per curiam).

Dr. Turner and P.A. Chigozie were Plaintiff's treating medical providers employed by the prison. (Compl., ECF No. 1, ¶III.8 and 10.) J. Wilk is a Health Service Administrator at FCI Fort Dix. (Id., ¶III.11.) Plaintiff did not allege that Dr. Turner refused to provide medical treatment, only that he disagreed with her treatment choices and that she did not immediately respond to his requests for medical attention. Plaintiff has not alleged non-medical reasons for delay in treatment or that the treatment he requested was medically necessary immediately. Plaintiff has not alleged deliberate indifference to his serious medical needs by Dr. Turner.

Plaintiff alleges P.A. Chigozie examined him on January 20, 2018, after Plaintiff was assaulted by Officer T. Brown, and that Plaintiff did not receive "proper adequate medical care." He further alleges that Chigozie did not respond to his requests for medical attention on January 21 and January 23, to treat his head pain. Plaintiff was, however, given a head x-ray on January 25, 2018. The allegation that Chigozie did not provide "proper adequate" care sounds in negligence and do not rise to the level of an Eighth Amendment violation. See White, 897 F.2d at 108-09 (medical malpractice cannot give rise to a violation of the Eighth Amendment).

Plaintiff alleges that E. Fletcher and G. Martin, employed by the prison in Health Services, each held the title "NREMT," which the Court assumes stands for National Registry of Emergency Medical Technicians. (Compl., ECF No. 1, ¶III.9.) Plaintiff alleges that when he complained to Fletcher about head pain and numbness, Fletcher made caustic remarks. Plaintiff alleges that Martin did not provide him with immediate medical attention for his pain when requested on several occasions.

Given the medical evaluation that Plaintiff received beginning on the day he was allegedly assaulted by Officer T. Brown, Plaintiff has not alleged facts suggesting that he required treatment from emergency medical technicians when he complained of

pain to Fletcher and Brown. His claims against Fletcher and Brown are primarily directed at delay in providing further evaluation and treatment for his continuing symptoms. Plaintiff has not alleged non-medical reasons for the delay or that he required immediate, medically necessary treatment. Plaintiff's claims against Fletcher and Martin do not rise to the level of an Eighth Amendment violation.

Plaintiff also seeks to hold J. Wilk, Health Services Administrator, liable for not providing medical treatment to Plaintiff from January 20, 2018 to January 30, 2018, in violation of the Eighth Amendment. (Compl., ECF No. 1, ¶V.101.) Plaintiff does not allege that he requested medical treatment from J. Wilk or that J. Wilk provided medical treatment to prisoners in his/her role as Health Services Administrator. Plaintiff fails to state an Eighth Amendment Claim against Wilk.

To the extent that Plaintiff seeks to hold Wilk liable as a supervisor,

> "There are two theories of supervisory liability," one under which supervisors can be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," and another under which they can be liable if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations."

Santiago v. Warminster Twp., 629 F.3d 121, 129 n.5 (3d Cir. 2010)
(quoting A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.,
372 F.3d 572, 586 (3d Cir.2004) (second alteration in original).
Plaintiff has not alleged sufficient facts to establish a
supervisory claim against J. Wilk.

The remainder of the defendants to Plaintiff's Eighth
Amendment inadequate medical care claims are non-medical prison
employees and administrators who are entitled to rely on prison
medical providers to treat the medical needs of inmates. Plaintiff
has not alleged that any non-medical prison employee or
administrator had reason to know that the prison medical staff
were mistreating or not treating Plaintiff, although Plaintiff
complained about the care he was receiving and the delay in
receiving it. See Spruill, 372 F.3d at 236 ("a non-medical prison
official will generally be justified in believing that the prisoner
is in capable hands" of the prison's medical experts.)

Further, Plaintiff does not allege facts suggesting that "his
condition was so dire and obvious" that the defendant officers
were deliberately indifferent for not summoning immediate medical
attention and "instead let the sick call process run its course."
Id. at 237. Upon reopening this action, if Plaintiff pays the

filing fee, the Court would dismiss the Eighth Amendment inadequate medical care claims without prejudice upon screening.

### 6. First Amendment Retaliation Claims against Ward, Tucker, Frazier, Byrd, Meredith, Ortiz and Giordano

The Court reserves the issue, for later briefing by the parties, whether the First Amendment Retaliation Claims arise in a new Bivens context and, therefore, require a special factors analysis before creating an implied Bivens remedy. See Ziglar v. Abassi, 137 S.Ct. 1843 (2017).

To establish illegal retaliation for engaging in constitutionally protected conduct, a plaintiff must allege facts indicating that: "(1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him." Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016). Filing inmate grievances is constitutionally protected conduct. Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (citing Babcock v. White, 102 F.3d 267, 275-76 (7th Cir. 1996)).

An adverse action must be "'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights.'" Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). The third element

of a retaliation claim may be established with evidence of "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Watson, 834 F.3d at 424. "[W]here the temporal proximity is not so close as to be 'unduly suggestive,'" the appropriate test is "timing plus other evidence." (Id., quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000)).

a.  Officer Byrd and Ortiz

Plaintiff did not allege any facts to establish how Byrd[4] or Ortiz were involved in retaliation. To the extent Plaintiff seeks to hold Byrd and Ortiz liable as supervisors, Plaintiff did not allege facts suggesting either of these supervisors established and maintained a policy, practice or custom which directly caused the constitutional harm or that they participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations. If Plaintiff reopens this action by paying the filing fee, the Court would dismiss the First Amendment

---

[4] Plaintiff alleges "Unit Manager Byrd is in charge of supervision of case manager's inmates['] case loads in specific housing unit and processing administrative remedy forms." (Compl., ECF No. 1, ¶III.7.)

Retaliation Claims against Byrd and Ortiz without prejudice upon screening.

b.    Officer Ward, Captain Frazier and Lt. Tucker

The Complaint contains only two allegations involving Officer Ward:

> Plaintiff complained to Captain Frazier on April 16, 2018 that Frazier, Lt. Tucker and Ward were violating Plaintiff's First Amendment rights by confiscating material sent from publications.
>
> … Ward … Delayed and Undermine[d] the Administrative Remedy Process, Uncalculated Cell Searches, Threats, Falsified Charges, and refusal to allow Plaintiff to receive material (mail) from publications having filed grievances for being assaulted by staff constituted retaliation therefore violated the First Amendment

(Compl., ECF No. 1, ¶¶62, 102.)

The Court notes that Plaintiff alleges Officer Brown assaulted him in January 2018, and he does not allege when he filed grievances against Brown for the alleged assault. These allegations against Frazier, Tucker and Ward are only conclusory as to whether their conduct was motivated by retaliation against Plaintiff for filing grievances against Brown. See Iwanicki v. Pennsylvania Dep't of Corr., 582 F. App'x 75, 79-80 (3d Cir. 2014) (conclusory allegations that prisoner's complaint was substantial or motivating factor behind allegation of retaliation were

24

insufficient to state First Amendment Retaliation Claim.) The Court would also dismiss these claims without prejudice upon conclusive screening under 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c).

### c. Lt. Tucker, Officer Brandon and Officer Giordano

In support of his retaliation claims against Brandon and Giordano and a second retaliation claim against Tucker, Plaintiff alleges,

> [o]n April 30, 2018, Lt. Tucker, Officer Brandon and Officer Giordano searched Plaintiff's cell and "trashed" his legal mail in retaliation for Plaintiff filing grievances against Giordano, Officer Meredith and Officer T. Brown. Plaintiff's cell was searched four times in seven days in retaliation for Plaintiff being assaulted by Officer T. Brown.

Plaintiff did not allege an unusually suggestive temporal proximity between his protected activity and the allegedly retaliatory action nor did he allege "timing plus other evidence" to establish the necessary causal link between the protected activity and the adverse action. The Court would dismiss these First Amendment Retaliation Claims against Tucker, Brandon and Giordano without prejudice upon conclusive screening under 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c)(1).

d.  Officer Meredith and Officer Giordano

Plaintiff's First Amendment Retaliation Claim against Meredith for confiscating Plaintiff's clothes while he was in the shower and then threatening him, allegedly because Plaintiff complained too much, would be permitted to proceed upon conclusive screening under 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c)(1).

Plaintiff also alleged a second First Amendment Retaliation Claim against Giordano. Plaintiff's claim that Giordano falsified a charge against Plaintiff of threatening bodily harm, three days after Plaintiff complained about Giordano threatening him, would also be permitted to proceed past screening if Plaintiff reopens this action by paying the filing fee. See Mitchell, 318 F.3d at 530 (false charge of misconduct resulting in disciplinary confinement constitutes adverse action). The Court notes that Plaintiff alleges the charge was reduced to "insolence towards staff" and was remanded on appeal. (Compl., ECF No. 1, ¶V.85A.)

> 7.  Fourteenth Amendment Due Process Claim against DHO Potter for refusing to call Plaintiff's ten eye witnesses, finding Plaintiff guilty of assault and possession of a cell phone with no evidence, providing an inadequate written disposition of the charges, and for refusing to allow Plaintiff to appeal

Wolff v. McDonnell , 418 U.S. 539, 555-56 (1974), sets forth the due process protections afforded to prisoners in disciplinary proceedings that may result in the loss of good conduct time. Young

v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991). The due process protections include: (1) written notice of claimed violations at least 24 hours in advance of hearing; (2) written summary of evidence relied upon by the fact-finder in reaching disciplinary decision; (3) opportunity to call witnesses and present documentary evidence in defense when permitting such is not unduly hazardous to institutional safety or correctional goals; and (4) [conditional] right to have a staff representative. Young, 926 F.2d at 1399-1406. A prisoner also has a due process right to an impartial decisionmaker, Wolff, 418 U.S. at 571, and a right that a finding of guilt and loss of good time credits be supported by "some evidence[.]" Superintendent, Mass. Corr. Institution, Walpole v. Hill, 472 U.S. 445, 454 (1985).

If a prisoner's due process claim regarding a prison disciplinary hearing necessarily implies the invalidity of the sanctions imposed as a result of the proceeding, the claim is not cognizable under § 1983. Edwards v. Balisok, 520 U.S. 641, 646-48 (1997). Plaintiff's allegations against DHO J. Potter would indeed imply the invalidity of his disciplinary sanctions. The Court would dismiss this claim without prejudice upon conclusive screening under 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c)(1). Plaintiff can bring this claim in an amended complaint if he can allege facts

establishing that the disciplinary sanctions were reversed on appeal.[5]

> 8. Conspiracy of the Defendants to deny Plaintiff's civil rights and deny him equal protection of the laws

42 U.S.C. § 1985(3) provides, in relevant part:

> If two or more persons in any State … conspire … for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; … in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

The Supreme Court has held that,

> in order to state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the

---

[5] Exhibit 16 to Plaintiff's Complaint is a response to Plaintiff's appeal of his disciplinary sanctions for "Assaulting Any Person" to the BOP Northeast Regional Office. The Regional Director noted, on October 12, 2018, that the Office had not received the disciplinary paperwork and could not conduct a thorough review until the disciplinary record was transmitted to it. (Compl., Ex. 16, ECF No. 1-1 at 21-22.)

28

> conspiracy; and (4) an injury to person or
> property or the deprivation of any right or
> privilege of a citizen of the United States.

Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997), as amended (May

15, 1997) (citing United Brotherhood of Carpenters and Joiners of

America, Local 610 v. Scott, 463 U.S. 825, 828-29; Griffin v.

Breckenridge, 403 U.S. 88, 102-03 (1971)).

Plaintiff's conspiracy claims are conclusory and do not

allege the necessary elements of a claim under 42 U.S.C. § 1985(3).

Particularly lacking are facts suggesting a discriminatory motive

or class-based animus and agreement by the defendants to violate

Plaintiff's rights. Upon screening under 28 U.S.C. § 1915A(b) and

42 U.S.C. § 1997e(c)(1), the Court would dismiss the conspiracy

claim against all defendants without prejudice.

III. PLAINTIFF'S MOTION FOR APPOINTMENT OF PRO BONO COUNSEL

Plaintiff seeks appointment of pro bono counsel under 28

U.S.C. § 1915(e)(1) because he cannot afford counsel, the issues

in the case are complex, he has limited knowledge of the law, and

two attorneys declined Plaintiff's request for representation.

(Mot. for Appointment of Counsel, ECF No. 2.) 28 U.S.C. §

1915(e)(1), provides "[t]he court may request an attorney to

represent any person unable to afford counsel."

As an initial matter, the Court cannot appoint counsel prior

to Plaintiff paying the filing fee to reopen this matter. There is

no statutory right to appointed counsel in a civil action, although district courts have broad discretion to request an attorney to represent an indigent civil litigant. Tabron v. Grace, 6 F.3d 147, 153 (3d Cir. 1993). The Court must determine whether, as a threshold matter, the complaint has some merit in law and fact. Id. at 155. Plaintiff has alleged several claims that have potential merit in fact and law.

The plaintiff's ability to present his or her case is a significant factor in a court's decision to appoint pro bono counsel. Id. at 156. Plaintiff's ability to file an extensive complaint against multiple defendants under several legal theories suggests that he has more than an adequate ability to present his case. This factor weighs against appointment of counsel. Further, the issues concerning retaliation and excessive force, the only claims in the original complaint that would be permitted to proceed upon payment of the filing fee, are not legally complex and are not likely to require extensive discovery or expert witness testimony.

At this early stage, the factors weigh against appointment of pro bono counsel. If Plaintiff pays the filing fee to reopen this action, the Court would deny this motion without prejudice.

IV. PLAINTIFF'S LETTER REQUEST TO ADD THE UNITED STATES AS A DEFENDANT

If Plaintiff pays the filing fee to reopen this action, the Court would permit Plaintiff to add the United States as a defendant. Plaintiff, however, must submit an amended complaint that includes his factual and legal bases for his claims against the United States. Plaintiff should be advised that absent waiver, "sovereign immunity shields the Federal Government and its agencies from suit." F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994).

The Federal Tort Claims Act waives "sovereign immunity of the United States for certain torts committed by federal employees." Id. at 475-76 (quoting 28 U.S.C. § 1346(b)). Thus, federal courts have jurisdiction over

> claims that are: [1] against the United States, [2] for money damages, ... [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Id. at 477. There is, however, a jurisdictional requirement for bringing such a claim. 28 U.S.C. § 2675(a) provides:

> "An action shall not be instituted upon a claim against the United States for money

damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section….

If Plaintiff pays the filing fee, reopens this action and submits an amended complaint adding FTCA claims against the United States, he should allege when he presented his FTCA claim to the Federal Bureau of Prisons, and when the claim was denied.

V.    CONCLUSION

For the reasons stated above, the Court denies Plaintiff's IFP application and will administratively terminate this action, subject to reopening upon payment of the filing fee.

An appropriate order follows.

DATE: April 12, 2019

                              s/Renée Marie Bumb
                              **RENÉE MARIE BUMB**
                              **United States District Judge**