UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RECEIVED

MAY -9 2019

AT 8:30_____M
WILLIAM T. WALSH, CLERK

| | | |
|---|---|---|
| KEVIN T. BALDWIN, | : | |
| Plaintiff, | : | CIV NO.   18-16213 (RMB) |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| D. Ortiz, | : | |
| UFN Grissom, | : | |
| UFN Frazier, | : | JURY TRIAL DEMANDED |
| UFN Tucker, | : | |
| J. Wilks, | : | |
| UFN Byrd, | : | |
| N. Turner, | : | |
| Ibe Chigozie, | : | |
| E. Fletcher, | : | |
| G. Martin, | : | |
| UFN Meredith, | : | |
| UFN Giordano, | : | |
| T. Brown, | : | |
| E. Evans, | : | |
| J. Potter, | : | |
| Defendants. | | |

-----------------------------------------

AMENDED

COMPLAINT FOR DAMAGES UNDER THE FEDERAL TORT CLAIMS ACT,
AND THE CONSTITUTION OF THE UNITED STATES

Plaintiff, KEVIN T. BALDWIN, files this action for damages under Bivens, for violations of his First and Eighth Amendment rights to the U.S. Constitution. The Plaintiff also brings this action under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq, for the tortious acts alleged herein, and the Declaratory Judgment Act, 28 U.S.C. § 2201.

Plaintiff avers based upon personal knowledge as to his own acts, acts witnessed as being done by others, or otherwise upon information and belief:

1

## JURISDICTION AND VENUE

**1.** This Court has jurisdiction over the Plaintiff's claim of violation of Federal Constitutional rights under 28 U.S.C. § 1331, 28 U.S.C. § 1346(b)(1), and the Federal Tort Claims Act ("FTCA") pursuant to 28 U.S.C. § 2671, et seq. over the tortious acts committed by the defendants.

2. Plaintiff has complied with all pre-suit requirements of 28 U.S.C. § 2671, et seq. Specifically, on May 11, 2018 Plaintiff served the Federal Bureau of Prisons Regional Director with an Administrative Claim Form SF 95, Claim for Damages, Injury. The claim was denied on August 30, 2018. Plaintiff has also exhausted his administrative remedies under 28 C.F.R. § 542.10 et seq, Remedy ID 932231.

3. Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(b)(2) and (e) because, among other things, a substantial part of the events or omissions giving rise to the claims occurred within the District of New Jersey.

## PARTIES

4. The Plaintiff, KEVIN BALDWIN ("Baldwin" or "Plaintiff") was confined at the Federal Correctional Institution at Fort Dix during the events described in this complaint. Plaintiff is a citizen of the United States and his current mailing address is P O Box 1000, White Deer, PA 17887. His register number is 15185-016.

5. Defendant UNITED STATES OF AMERICA ("United States") operates prisons throughout the United States and exercises control, supervision,directs it's staff, practices, policies, procedures, training and disciplinary action against staff.

6. The United States ia an appropriate party, with certain exceptions, for injuries caused by the negligent or wrongful act or omission of any federal employee acting within the scope of his or her employment in accordance with the law of the State where the act or omission occurred.

2

7.    The United States is an appropriate party for injuries caused by investigative and law enforcement officers arising out of negligence, negligent supervision, assault, battery, and malicious prosecution. Employees of the Federal Bureau of Prisons fall under the investigative and law enforcement officer as defined by 28 U.S.C. § 2680(h) and are not immune from suit.

8.    The Federal Bureau of Prisons ("BOP") is a component of the U.S. Department of Justice ("DOJ"), an executive level department of the United States. The BOP is controlled by the United States who directs, supervises, trains, oversees, implement policies, procedures and manages its operations and staff.

9.    The BOP is broken up into six regions. Each region has a Regional Director who directs, sueprvises, trains, reviews, oversees, implement policies, procedures and manages the operations of the prisons within that region as well as the staff.

10.    Each of the BOP prisons has a Warden. The Warden supervises the employees and is responsible for investigating claims made by inmates that they were injured as a result of staff. The Warden is also responsible for ensuring the safety and security of prisoners by removing staff who engage in misconduct and inappropriate behaviors within the institution.

11.    Defendant David Ortiz ("Ortiz") is the Warden at Fort Dix. As Warden Ortiz exercises control, supervision, directs and manages the operation of the institution. At all relevant times, this defendant was acting as the agent, servant, an employee of the United States. This defendant is sued in his official and individual capacity.

12.    Defendant UFN[1] Grissom ("Grissom") is an Associate Warden at Fort Dix prison. As an associate Warden, Grissom directs, exercises control, supervision and management of the institution in conjunction with the Warden and in the absence of the Warden, acts as Warden. Grissom is also responsible for ensuring discipline, training, supervision, hiring and management of the staff at the institution. At all relevant times, this defendant was acting as the agent,

---

[1]  "UFN" means Unknown First Name.

3

servant, and employee of the United States within the scope of his employment
and with the consent and permission of the United States. This defendant is
sued in his official and individual capacity.

13. Defendant UFN Frazier ("Frazier") is a Deputy Captain at the Fort Dix
institution. As Deputy Captain Frazier is responsible for directing, control,
supervision and management of the correctional staff and officers. Frazier
is also responsible for the hiring, training and discipline of correctional
staff that report to him and shares that responsibility with the Warden and
Associate Warden. At all relevant times, this defendant was acting as an
agent, servant and employee with the consent and permission of the United States.
This defendant is sued in his official and individual capacity.

14. Defendant UFN Tucker is a correctional Lieutenant in charge of the
Special Housing Unit ("SHU") at the Fort Dix institution. Like the deputy
captain, Tucker is responsible for ensuring the policies, rules, regulations
and practices are followed by the institution staff and correctional officers.
Tucker is responsible for the training, supervision and discipline of staff.
At all relevant times, this defendant was acting as the agent, servant, and
employee of the United States within the scope of his employment and with the
consent and permission of the United States. This defendant is sued in his
individual and official capacity.

15. Defendant J. Wilks is the Health Services Administrator at Fort Dix
and is responsible for the Health Services Department. J. Wilks ("Wilks") is
responsible for ensuring that staff comply with BOP rules, regulations, practices
relating to providing health services, medical care, prescriptions, community
level quality of care. Wilks is also responsible for directing, supervising,
managing and disciplining staff in the Health Services department. At all
relevant times, this Defendant was acting as the agent, servant, and employee
of the United States within the scope of his or her employment and with the
consent and permission of the United States. This defendant is sued in her
individual and official capacity.

16. Defendant UFN Byrd was the Plaintiff's assigned Unit Manager while
he was at Fort Dix. As Unit Manager UFN Byrd ("Byrd") is responsible for the
supervision of the Correctional Counselor(s) and Case Manager in the unit.

4

Byrd is responsible for the training, discipline, retention, hiring and directs the Unit Team staff. At all relevant times, this defendant was acting as agent, servant and employee of the United States within the scope of his employment and with the consent and permission of the United States. This defendant is sued in his individual and official capacity.

17. Defendant N. Turner ("Turner")is the Medical Director/ Clinical Director at the Fort Dix institution. As the Medical Director/ Clinical Director Turner is responsible for supervising the delivery an directing care provided to prisoners. Turner is also responsible for the supervision, training, management, discipline and direction of the staff providing health services such as the Physician's Assistant and qualified healthcare professionals. At all relevant times, this defendant was acting as the agent, servant and employee of the United States within the scope of his or her employment and with the consent and permission of the United States. This defendant is sued in his individual and official capacity.

18. Defendant Ibe Chigozie ("Chigozie") is a Physician's Assistant at the Fort Dix institution under the supervision and direction of N. Turner. As a Physician's Assistant Chigozie is responsible for providing initial assessments of inmate's medical and mental health issue as well as ensuring proper care is delivered to inmates. At all relevant times, this Defendant was acting as the agent, servant, and employee of the United States within the scope of his or her employment and with the consent and permission of the United States. This defendant is sued in her individual and official capacity.

19. Defendant E. Fletcher ("Fletcher") is a Physician's Assistant at the Fort Dix institution under the supervision and direction of Turner. As a Physician's Assistant Fletcher is responsible for providing initial assessments of inmate's medical and mental health issues as well as ensuring delivery of proper care to prisoners. At all relevant times, this Defendant was acting as the agent, servant, and employee of the United States within the scope of his or her employment and with the consent of the United States. This defendant is sued in his or her official capcity and individually.

20. Defendant G. Martin ("Martin") is an NREMT-P at the Fort Dix institution. As a NREMT-P Martin is responsible for providing assessments and medical care

5

to prisoners. At all relevant times, this defendant was acting as the agent, servant and employee of the United States within the scope of his or her employment and with the consent and permission of the United States. This defendant is sued in his or her individual and official capacity.

21. Defendant UFN Meredith ("Meredith") is a correctional officer at the Fort Dix institution. As a correctional officer, Meredith is required to comply with all BOP regulations, rules and policy statement when it comes to the safety, security, and orderly running of the institution and inmate health and safety. At all relevant times, this Defendant was acting as the agent, servant and employee of the United States within the scope of his or her employment and with the consent of the United States. This defendant is sued in his or her official capacity and individually.

22. Defendant T. Brown ("Brown") is a correctional officer at the Fort Dix institution. As a correctional officer, Brown has direct responsibility for the day to day supervision of inmates and the enforcement of rules and regulations. They have safety, security and sanitation responsibilities. Correctional officers are jointly supervised by Unit Managers, Lieutenant's, Deputy Captain, Associate Warden and the Warden. At all relevant times, this defendant was acting as the agent, servant and employee of the United States within the scope of his or her employment and with the consent of the United States. This defendant is sued in his or her official capacity and individually.

23. Defendant E. Evans ("Evans") is a correctional officer at Fort Dix institution. As a correctional officer, Evans has direct responsiblity for the day to day supervision of inmates and enforcement of rules and regulations. They have safety, security and sanitation responsibilities. Correctional officers are jointly supervised by Unit Managers, Lieutenant's, Deputy Captain, Associate Warden and the Warden. At all relevant times, this defendant was acting as the agent, servant and employee of the United States within the scope of his or her employment and with the consent of the United States. This defendant is sued in his or her individual and official capacity.

24. Defendant J. Potter ("Potter") is a Discipline Hearing Officer. A Discipline Hearing Officer ("DHO") conducts disciplinary hearings on serious rule violations or repetitive violations less serious in nature. A DHO is required to be impartial and independent of the institution and BOP. At all relevant

times, this defendant was acting as the agent, servant and employee of the United
States within the scope of his or her employment and with the consent of the
United States. This defendant is sued in his or her individual and official
capacity.

25.   Defendant UFN Giordiano ("Giordiano") is a correctional officer at the
Fort Dix institution. As a correctional officer, Giordino has direct responsib-
ility for the day to day supervision of inmates and enforcement of rules and
regulations. They have safety, security and sanitation responsibilities.
Correctional officers are jointly supervised by Unit Managers, Lieutenant's,
Deputy Captain, Associate Warden and Warden. At all relevant times, this defendant
was acting as agent, servant and employee of the United States within the scope
of his or her employment and with the consent of the United States. This defendant
is sued in his or her individual and official capacity.

### STATEMENT OF FACTUAL ALLEGATIONS

26.   The First Amendment to the U.S. Constitution protects prisoners rights
to Free Speech, from retaliation for filing prison grievances, the denial of
access to the courts and to freely exercise their religious practices.

27.   The Eighth Amendment protects prisoners from dilberate indifference
and cruel and unusual punishments.

28.   Under 18 U.S.C. § 4042 mandates a duty of care and protection to prisoners
sentenced and serving time by the Defendants.

29.   28 C.F.R. § 541.20 et seq. limits the basis and discretion for the
placement of prisoners in the  Special Housing Units ("SHU"). Section § 541.25
requires notice be provided within 24 hours and said notice includes a narrative
demonstrating clearly objective evidence that the inmate poses a serious threat
to the institution. Section § 541.26 (a liberty interest) requires that the
placement decision be reviewed within 24 hours of placement by an independent
supervisory  correctional officer. In addition the placement decision is reviewed
by the segregation Review Official ("SRO") within 3 days, 7 days (in person)
and every 30 days of continous placement to determine in continued detention
is warranted via a hearing, the inmate can attend. Section § 541.32 requires

7

medical care to be provided and to have a mental staff examine the person including a personal interview. These reviews are required to be documented on the appropriate forms.

30. Staff are required to obtain approval from a Lieutenant or Captain before placing an inmate in the SHU pending investigation. When an inmate is placed in the SHU, an Administrative Detention Order ("ADO") is prepared, BP-A0308 by the Lieutenant or other correctional supervisor. The specific reason for placement in the SHU must be supported by objective evidence and clearly articulated in the narrative section of the ADO. A new ADO is required for each time the inmate's detention status changes. Id. The person responsible for placement cannot act as the SRO or reviewing correctional supervisory official. PS 5270.09.

31. In making SHU Determinations, officials are required to consider the seriousness of the alleged offense, including whether the offenses involved violence, escape or posed a serious threat to the institutional safety or orderly running of the institution. Id.

32. The SRO reviews include the inmate records while int he SHU (BP-A0292), all available memorandum from staff (including psychology staff0, all investigatory memorandums. The SRO completes a BP-A0295 Special Housing Review of the SHU record and other relevant documentation.

33. Policy Statement 5270.11 mandates quarterly training on policy, procedure and oper-ation of staff assigned to SHU prior to the start of each new quarter regardless of how many times a staff member has completed the training.

34. The BOP Employee Standards of Conduct, PS 3420.11 prohibits its employees from, inter alia, "inattention to duty," "falsification, misstatement, exaggeration, or concealment of material facts in connection with any record, investigation or other proper proceeding," intentional violations of rules governing ... negligent violations, failure to report retaliation." "disorderly conduct, fighting, threatening, or attempting to inflict bodily injury to another," "endangering the safety of or causing injury to staff, inmates..," "physical abuse of an inmate." In their official capacity may not use profane, obscene or abusive language when communicating with inmates. Employees shall conduct

8

themselves in a manner that will not be demeaning to inmates.

35.  The BOP is required to provide medical care at the level you would
ordinarily receive if you were in the community.

36.  The Warden of each institution has the primary responsibility for ensuring
that the Standard of Employee Conduct are provided and made known to each employee.
The Warden must ensure that staff are made aware of updates and revisions that
affect employee conduct and receive annual training on their responsibility
in the policy.  Each employee signs an acknowledgement of Receipt of Standards
of Employee conduct - BP-A0165.

37.  Defendants United States of America, Ortiz, Grissom, Turner, Tucker,
Frazier, Byrd and Wilks have established and maintained a policy or custom which
directly caused the constitutional harm complained of, and or directed others
to violate them, and had knowledge of and acquiesced in their subordinate's
violations.

B.    FACTUAL ALLEGATIONS

38.  While asleep in his assigned bunk, at approximately 1:35 am, Plaintiff
was pulled out of his assigned bunk and Brown began assaulting and committing
battery upon him while ten (10) other inmates watched and witnessed the events
taking place, on this 20th day of January.

39.  Brown threw repeated punches which hit the Plaintiff on his face, nose,
eyes and mouth causing extreme pain and suffering.  Brown repeatedly threw
unwarranted and unnecessary blows to the right side of plaintiff's head with
a flashlight.  Thereafter, Brown choked plaintiff until he became unconscious.

40.  At no point in time did plaintiff attempt to defend or respond to the
actions of Brown, or resist in any way.

41.  As a result of the punches and blows, plaintiff experienced extreme
pain on the right side of his head, face and had blurry vision. At no time did
Brown attempt to get medical or request medical assistance.

42.  Plaintiff was then escorted to the Lieutenant's office where pictures were taken of his entire body.

43.  Plaintiff was then escorted to Health Services where a video examination of the body injuries were documented by Chigozie and Lieutenant Fernandez.

44.  While a video examination was done, no medical care was provided despite the repeated requests and indications of pain and suffering.  Plaintiff was then escorted to the SHU. Chigozie recognized the severity of injuries but rendered no medical care nor did Chigozie attempt to obtain or contact anyone else to provide the necessary and medically necessary care.

45.  On January 23, 2018 Plaintiff sent a medical request to Chigozie explaining that he was experiencing extreme pain on the right side of his head, face and had blurry vision.  No response was received nor did any medical staff inquire as to my status despite being aware of the severe injuries Plaintiff suffered.

46.  As demonstrated by Exhibit 1, on January 23, 2018 Plaintiff sent a second request to Chigozie explaining that he was still experiencing extreme pain on the right side of his head and face with numbness.  No response was received to the request for immediate care or to be seen.

47.  As demonstrated by Exhibit 2, on January 25, 2018 Plaintiff  was escorted to Health Services were an x-ray was conducted of Plaintiff's head.  However, none of the medical staff saw fit to evaluate and provide any medication nor did they attempt to address the pain and suffering or numbness. During the x-ray Plaintiff provided the facts surrounding his injuries and recording "pt states he was assaulted on 1/20/2018 by CO officer getting hit multiple times in the right side of his head and face - pt states since he has had pain his right eye radiating to the top of his head and blurry vision." Id.

48.  As demonstrated by Exhibit 3, the X-Ray Doctor advised the institution that a follow up should be done within 1 day.  As a result of postconcussion syndrome, his blood pressure chould be checked within the next one to 2 days. The Plaintiff was prescribed Dexamethasone Acetate, 10 mg.

49.  On January 26, 2018 at 5:57am, Plaintiff notified Evans that he needed

10

medical attention due to experiencing dizziness and pain on the right side of his head and much numbness of his face. Later Martin came to Plaintiff's cell door and questioned him about his problem. Plaintiff informed Martin that he needed medical attention, that he was in extreme pain on the right side of his head and face feel like it's bleeding on the brain as well as numbness on the right side of his face.

50. Martin told the Plaintiff "you don't need no medical attention, you got the brakes beat off of you, you need time to heal" then walked away." Plaintiff requested that Martin put everything in writing what he explained to him on what was wrong with him. Martin responded "he wasn't doing that he don't have to." Plaintiff again requested a catscan due to the numbness and soreness of his head and face.

51. Dr. Turner was doing official rounds in the SHU when Plaintiff stopped her as she approached his cell door and explained that he needed medical attention. Plaintiff explained that his brain felt like it was going to explode on one side of his head, he was in extreme pain and numbness due to being beaten by Officer Brown with a flashlight. Dr. Turner indicated I will be taken to outside medical I will just have to wait and proceeded to walk away.

52. Between January 26, to the 29, Plaintiff received no follow-up about his repeated requests for medical care, despite Turner, Martin Chigoze, Brown, Fernandez and others being aware that Plaintiff was suffering with extreme pain and numbness as a result of being assaulted.

53. On January 29, 2018 while Deputy Captain Frazier was doing his official rounds, Plaintiff informed him that he was in need of medical care, the right side of his head was in excruciating pain with numbness and he has requested repeatedly medical care and has not been provided any. Frazier responded "just be patient, I understand what you are going through." At that time Frazier explained that I should have never received an incident report.

54. On January 30, 2018 at around 9:30 a.m. Plaintiff advised Evans of his continuing pain and suffering that he was enduring as a result of being hit on the head with a flashlight and that he was in need of medical care and needed to see medical. Plaintiff further advised Evans he could no longer

11

bear the pain anymore and needed help. Evans responded "why didn't you speak to medical thirty minutes ago" and that he wasn't contacting medical, "call me when you die" and walked off.

55.  At 10:30am, Plaintiff notified Lt. Tucker that he was in pain and suffering as a result of the assault by Brown and needed medical. Lt. Tucker stated that she will notify medical. Plaintiff waited for medical to show up, but they never came.

56.  At 11:30 am, Plaintiff advised A.W. Smith that he needed outside medical care after being assaulted ten days ago by Brown. Yet AW Smith took no action.

57.  At 12:45pm Fletcher came to the cell door after speaking to Evans. Fletcher began speaking to Plaintiff in a very aggressive tone, caustic remarks pertaining to his request for medical attention. Plaintiff explained to Fletcher for the past 10 days he has been suffering in pain in his head and face.

58.  On January 31, 2018 at around 10:00am, Plaintiff was finally examined by two Health Services staff members in the SHU. At around 1pm, Plaintiff was escorted by two officers, Copeland and Davis to Robertwood Johnson Hospital to receive a catscan which Dr. Gojaniuk diagnose Post Concussion Syndrome and Hypertension after pleading eleven (11) days for medical care for head trauma, pain and numbness. Dr. Gojaniuk questioned Plaintiff as to why it took so long to get care, and that he should have been transported immediately to the emergency room. As Plaintiff explained to Dr. Gojaniuk, he shook his head in disbelief that the staff would not have addressed this issue sooner.

59.  On the same day, Dr. Gojaniuk prescribed medication for the brain injury and providing specific instructions for follow-up.

50.  On Feburary 2, 2018 Plaintiff informed Martin that his head is still bumb in a lot of excruciating pain and he has not received the medication that Dr. Gojaniuk prescribed after diagnosing  Plaintiff with Poost Concussion syndrome. Martin just walked off from the cell door. As demonstrated by Exhibit 4 is a copy of the instructions and prescription written by Dr. Gojaniuk.

51.  On February 3, 2018 Plaintiff was advised by Martin that he could not

12

locate the medication Dr. Gojaniuk prescribed for the brain injury and that he contacted Robertwood Johnson Hospital and they were giving him the run around.

52. On February 4, 2018 at 11:56am, Plaintiff advised Captain Perez that he was not receiving his prescribed medication from Dr. Gojaniuk and that his vision has become very blurry and he is suffering with dizziness. Captain Perez indicated he would email Health Services.

53. On Feburary 4, 2018 at 1:00pm, Plaintiff refused to submit Plaintiff's request form to Dr. Turner. Evans wrote on the form "MEDICAL" and slid it back under the cell door stating "don't know why you keep writing, nothing is going to change" demonstrated by Exhibit 5.

54. On February 5, 2018 at 8:30am Plaintiff advised Lt. Tucker of the need to see Dr. Turner about the severe headaches and blurry vision. Lt. Tucker told Plaintiff to submit a request form. This was done and handed directly to her.

55. On Feburary 5, 2018 lt. Tucker confirmed to Plaintiff that she contacted Health Services and assured him that Health Services will come to provide medical care. No health services staff came to provide any care. Lt. Tucker was requested to provide a written statement of what he told Plaintiff, but refused to do so.

56. On Feburary 6, 2018 Plaintiff asked Dr. Turner why he has not received his medication prescribed by Dr. Gojaniuk. Dr. Turner's response was "the papers were lost by someone."

57. At around 7pm on February 6, Plaintiff finally received the medication he was prescribed on January 31. (Exhibit 5). Plaintiff had still not received a follow-up within the 1 day ordered by Dr. Gojaniuk.

58. On February 7, 2018 Plaintiff was examined by Dr. Geignbutz whose assessment concurred with Robertwood Johnson as to Post Consussion Syndrome, blurry vision neurologic in nature and recommended visting neurology, that Plaintiff be permitted to wear sunglasses, and also prescribed NSAID to relieve pain and his current lid discomfort, demonstrated by Exhibit 7.

13

59.  On February 22, Plaintiff advised Martin when at my cell door that the symptoms have gotten worse and he was having and experiencing pain 24/7. Plaintiff advised Martin that no one is helping him. He has submitted numerous request forms that have gone unanswered. Martin advised Plaintiff that he could not do anything about it, It was given to Dr. Turner and she is trying to figure out what to do.

60.  On Feburary 23, 2018 Plaintiff advised Martin if he could inquire as to why Plaintiff has not received the eye medication and sun-glasses prescribed by Dr. Geignbutz on Febuary 7, 2018 after Plaintiff complained to Martin that he was continuing to suffer in pain, especially in the right eye.

61.  On February 27, Plaintiff finally receive the sunglasses prescribed over three weeks ago. No information was provided about the the eye drops.

62.  On March 1, 2018 Plaintiff submitted a written request to Health Services staff requesting eye drops which was prescribed since February 7. On the same day Plaintiff advised Captain Fraizer that he is constantly suffering from pain due to a concussion, and simply responded "I understand that you are going through pain and you just have to wait to see medical."

63.  On March 2, 2018 at 3:23 Plaintiff finally received the eye medication prescribed since February 7, 2018.

64.  On March 2, 2018 Plaintiff submitted a request to Dr. Turner indicating he "needed outside medical treatment due to pain and numbness of the right side of his head and face." Plaintiff also asked why she refuses to answer his repeated request forms.

65.  On March 8, 2018 Plaintiff asked Captain Frazier why he has not been taken to outside medical since Dr. Feignbutz recommend that over a month ago. Captain Frazier told Plaintiff "you have to just wait." Plaintiff further advised Frazier that he was suffering in the hole in extreme pain on the right side of his head, something is wrong. Frazier repeated to Plaintiff, "You just have to wait."

66.  On March 8, 2018 Plaintiff sent another request to Dr. Turner regarding the pain and numbness on the right side of his head and face which was delivered

14

to Officer Solan who personally gave it to Chigozie from Dr. Turner.

67. On March 27, 2018 Plaintiff was escorted to St. Francis Center to visit the neurologist for an evaluation. Dr Taboada made assessments of Post Concussion Syndrome and Hypertension, recommending an EEG and MRI of the brain as demonstrated by Exhibit 8.

68. On March 27, 2018 staff from Health Services gave plaintiff medication with no name and told Plaintiff to take it in front of him as it was prescribed by Dr. Turner.

69. On March 28, 2018 even Martin came to the cell door and told plaintiff that the topiramate that plaintiff took twice wasn't authorized and they had to wait until the BOP in Washington DC gave authorization first.

70. On March 29, 2018 at aproximately 8:05 am, Officer Solan escorted Plaintiff to the shower. Once Plaintiff entered the shower and undressed, Plaintiff received fresh clothes and towel from Officer Solan to shower. After Officer Solan departed, Officer Meredith approached the shower and confiscated plaintiff's clothes and stated "head butt me so I can whip your ass." Meredith further stated "you're a snitch, you complain too much." Meredith further stated "you want a BP-9?, My father works at the region." Meredith further stated "you are afraid to return to the compound."

71. On March 29, 2018 between 8:14 a.m. and 9:46 a.m. Plaintiff advised the Officer in Charge and Lt. Weaver about the threat, assault and defamation of Plaintiff's character and physical well being and requested to speak to the Associate Warden Grissom.

72. On April 16, 2018 at 9:58 a.m. Frazier approached the cell door, and Plaintiff informed him that he, Lt. Tucker and Staff member Ward were continuously violating Plaintiff's First Amendment rights by intercepting and confiscating material sent from publishers. Plaintiff showed Frazier a copy of FCI Fort Dix rules and regulations regarding inmate's that are placed in Administrative Detention (Exhibit 9 and 10). Frazier responded "You are not getting material from publishers," so continue doing what you are doing.

15

73. On April 25, 2018 at 3:05 pm Plaintiff asked the staff from Health Services why he has not received the eye medication that was prescribed on March 12. The following day Plaintiff received the medication (Exhibit 11).

74. On April 27, 2018 Officer Giordano threaten Plaintiff verbally stating "Do you want me to get Officer T. Brown again, next time he will take your sunglasses that Dr. Feignbutz prescribed."

75. Plaintiff reported the threat via a BP-8 and gave it to A.W. Kodger. Plaintiff also informed A.W. Grissom about Officer Giordano threating him. Plaintiff advised AW Grisson that he did not want Officer Giordano cuffing him up again because of the threats. A.W. Grissom responded "you don't have to wrry because you are behind a dorr." (Exhibit 12).

76. On April 30 at approximately 10:30 am Plaintiff and his cellmate was escorted to the shower. Lt. Tucker, Officer Brandon, and Officer Giordano searched cell 208 which was assigned to Plaintiff. in searching the room, they trashed Plaintiff's legal mail due to Plaintiff filing grievances on Officer Giordano, Officer Meredith, and Officer T. Brown in violation of Plaintiff's First Amendment rights. As part of the continuing violation of Plaintiff's first amendment rights, his cell was searched four times in seven days in retaliation for the grievances that was submitted.

77. On April 30, 2018 after reporting Officer Giordano for misconduct of threatening Plaintiff on April 27, Officer Giordano falsified an incident report charging him with Threatening Bodily Harm, a Code 203 violation.

78. On April 30 at approximately 4:51pm, Lt. Tucker came to the cell door and Plaintiff asked her why would she and other officers trash his legal mail. Lt. Tucker responded "no one threashed your mail and walked off." Officer Stahlin stated "Don't nobody care about your fucking legal mail." (see Exhibits 12 and 13).

79. On May 1, 2018 Plaintiff was advised by unit Manager Byrd that the BP-8 pertaining to Officer Meredith were lost and the BP-9 for violation of his First Amendment rights were lost as demonstrated by Exhibit 13.

80. On May 1, Plaintiff was moved around twice in one week. Plaintiff

16

handed to Warden David Ortiz a listing of the dates of threats, retaliation, false charges and cell searches as demonstrated by Exhibit 13.

81.  On May 2 Plaintiff submitted a BP9 regarding the retaliation by Frazier, Lt. Tucker and Officer Giordano to staff member A.W. Grissom, who passed them to Counselor Gonzales and had them in his hands.

82.  On May 4, 2018 Plaintiff informed Martin that his head is hurting severely and that he needed outside medical attention.  Martin responded stating "I need a vacation."

83.  On May 5, 2018 at 3:40 p.m.  Plaintiff informed Martin that his head is in excruciating pain.  Plaintiff gave him a request form for Dr. Turner stating "his head is hurting and he is suffering and needs medical attention."

84.  On May 8, 2018 Plaintiff was transported to St. Francis Center for an EEG.  After the EEG, Plaintiff was transported back to Fort Dix and taken directly to the SHU without medical check-ups as per BOP policy.

85.  On May 10, 2018 at approximately 3:15pm, Lt. Tucker notified Plaintiff verbally "he is constricted to a single cell" removing inmate Beasley, 36863-037 from the cell.  Lt. Tucker also stated "only Lieutenants are to accept Plaintiff's mail to be mailed out and only Lts are to escort Plaintiff to and from  the showers."

86.  On May 13, 2018 at 11:07 am, Officer Gunn called Plaintiff a "rat" which was witnessed by inmate Dinkins, #63096-037.

87.  On May 16, 2018 Plaintiff submitted a request form to J. Wilks, Health Services Administrator complaining about extreme pain of the right side of his head, vision was blurry, experiencing diziness and was in need of medical attention.

88.  On May 16 at 12:30pm Plaintiff was escorted to Health Services to have an MRI which was completed.  Plaintiff overheard Health Services staff relay to Lt. Tucker that Martin was on vacation, which confirms the statement on May 4 made by Martin when Plaintiff requested medical attention due to

17

the brain injury "he needs a vacation."

89. On May 16, Plaintiff's cell was trashed by staff two times in three days as part of the continuing retaliation by the staff for filng grievances.

90. On May 17, 2018 Plaintiff was transferred from Fort Dix SHU to FDC Philadelphia SHU with no property form as per BOP policy.

91. On May 19, Plaintiff submitted another request requesting medical attention due to the numbness of the right side of his head, brain and face.

92. On August 1, 2018 FDC Philadelphia Discipline Hearing Officer J. Potter violated Plaintiff's right to due process granted under 28 C.F.R. 541.8 by not aloowing the 10 witnesses to testify who witnessed of the entire incident when Officer T. Brown assaulted him.

93. On August 3, 2018 Plaintiff was escorted by neurologist Dr. Taboda where he further assessed and diagnosed him with Chronic Post Concussion, HTN, and Deprission" and recommending an MRI of the cervical spine as demonstrated by Exhibit 14.

94. On June 20, 2018 the falsified charge of Threatening Bodily Harm, Code 203 was reduced to Insolence Towards Staff, code 312.

95. On September 26, 2018 Plaintiff was escorted to Hahnesmann University Hospital for an MRI of his cervical spine. The MRI results of the Plaintiff's cervical spine were as follows; demonstrated by Exhibit 15:

   a. C4-C5 - there is a diffused disc bulge effacing the ventral thecal sac with mild spinal canal stenosis;
   b. C5-C6 - there is a right paracentral disc protrusion effacing the right ventral thecal sac with mild spinal canal stenosis;
   c. C6-C7 - there is a mild central disc protrusion slightly indenting the ventral thecal sac without significant canal stenosis or forminal narrowing.

96. On October 5, 2018 Plaintiff received a response from Federal Bureau of Prisons Northeast Regional office regarding the falsified report of Threatening Bodily Harm **Code 203 fil**ed by Officer Giordano which was reduced

18

to Insolence Towards Staff, Code 312. The Regional office remanded the matter
for further review as demonstrated by Exhibit 15A.

   97.  On October 12, 2018 Plaintiff a response from the Northeast Regional
Office regarding the August 1, 2018 decision of the DHO Officer J. Potter
that found Plaintiff committed the prohibited acts of assaulting any person,
Code 224, possession of hazardous tool, Code 108, Incident Report No. 3079879.
The Incident Report was remanded for further review. The appeal was partially
granted as demonstrated by Exhibits 16, 16A.

   98.  As a result of the injuries sustained by the assault, battery committed
by Officer T. Brown, plaintiff is currently taking Atorvastatin, Propranolol,
Lisinopril, and Sertraline prescribed by Dr. Toboda to help with the pain
and suffering from the brain and spinal injuries.

   99.  More than 10 months has elapsed since plaintiff was assaulted and
battered by Officer T. Brown and plaintiff continues to suffer with headaches
throughout the day. The pain becomes so unbearable at times that Plaintiff
cannot stand. Plaintiff's right side of his face, his eye, head and neck
are constantly in pain and numb.

   100.  Plaintiff right eye socket is always sore and heavy, as to touch or
raise his right eye lid causes a sharp pain to travel to the right side of
his brain. Plaintiff's eye is always throbbing constantly.

   101.  When Plaintiff attempts physical activity such as bending over, pain
elevates in the eye as well as the brain. Plaintiff is unable to lay on the
right side as he experiences severe pain when he does.

   102.  Plaintiff has and continues to have numbness on the right side of
his neck, shoulder and arm and finds it difficult to assume the positions
when praying 5 times a day in the exercise of the religious practices.

   103.  Plaintiff suffers from feeling unstable, as if lost, unsure of himself.
Plaintiff feels as if he is in need of others approval in order to do even
smple things properly. Plaintiff is constantly suffering from confusion,
forgetting words in the middle of sentences, among other disabilities.

104.  Plaintiff can not stay focus on anything for prolonged periods, experiences dizziness when standing or bending as though his equilibrium is off.

105.  Plaintiff's vision is constantly blurry, speech and thought process have become stagnated.

106.  Plaintiff has the propsenity to drop items almost every time when attempting to retrieve something.

107.  When Plaintiff coughs, sneezes, pass gas, urinate, defecate, or become arouse, sharp pain surges through the right side of Plaintiff's brain as a result of the injuries suffered from the assault and battery from Officer T. Brown.

108.  The Incident Report charging Code 203 was favorably terminated in favor of the Plaintiff.

109.  The actions to which Plaintiff was subjected was consistent with an institutionalized practoce of the Federal Bureau of Prisons which was known to and ratified by defendants Grissom, Ortiz, Frazier, Tucker and the United States.

110.  Despite knowledge of these institutionalized practices, the defendants Grissom, Ortiz, Frazier, Tucker and the Untied States have at no time taken any effective action to prevent BOP personnel from continuing to engage in this type of misconduct.

111.  Defendants Ortiz, Grissom, Frazier, Tucker and other shad prior notice of the viciouss propensities of defendant's T. Brown, Martin. Chigozie, Fletcher, Meredith , Giordano, Turner and Evans; but took no steps to train them, correct their abuses of authority or to discharge their unlawful use of authority.

112.  The failure by defendants United States, Grissom, Ortiz Turner, Frazier, Tucker to properly train defendants Martin, Chigozie, Fletcher, Meredith, Giordano, and Evans, Byrd, Wilks and others included the failure to instruct them in applicable provisions of the proper and prudent use of force as well as delivery of immediate medical care.

20

113.  The Defendant United States authorized, tolerated as institutionalized practices, and ratified by the misconduct detained above by:

a.  failing to properly discipline, restrict and control employees, including defendants Ortiz, Grissom, Frazier, Tucker, Wilks, Byrd, N. Turner, Chigozie, Fletcher, Martin, Meredith, Giordano, Brown, Evans and Potter, known to be irresponsible in their dealing with prisoners.

b.  the failing to take adequate precaution in the hiring, promotion, and retention of personnel, including specifically defendants Ortiz, Grissom, Frazier, Tucker, Wilks, Byrd, Turner, Chigozie, Fletcher, Martin, Meredith, Giordano, Brown, Evans and others.

c.  failing to forward to the Office of Internal Affairs, Office of Professional Responsibility and other appropraite departments evidence of criminal acts commited by BOP personnel and instead attempt to engage in cover-up and retaliatory acts against inmates;

d.  failing to establish or assure the functioning of a bona fide and meaningful departmental system for dealing with complaints of staff misconduct, but instead respond to these types of complaints with bureacratic power and offical denials calculated to mislead.

114.  After Plaintiff's first visit to outside medical, the doctoer ordered follow-up by the Primary Care Physician at the institution.  The follow-up visit was never completed.

115.  The plaintiff submitted repeated requests, requesting medical attention for the pain, his medication, and sunglasses, yet it took more than two weeks to receive these items.

116.  Defendants Chigozie, Fletcher, Martin, Frazier, Tucker, Grissom, Wilks and Evans are the gatekeepers for medical care who refer the cases to Dr. Turner.

117.  Defendant Turner is responsible for arranging the specialized medical care outisde the prison.  After 2 weeks of being in disciplinary segregation

21

the plaintiff received no responses from the medical department and specifically
Dr. Turner.

118.   Plaintiff is in great pain and agony as a result of the injuries
sustained from the assault and remains that way.

119.   Defendants Ortiz, Grissom, Frazier, and Tucker had been placed on
notice of the abusive conduct of Defendant Brown by a number of complaints
and grievances over many months, but has failed to take disciplinary action
against them or otherwise to control his behavior.

a.   Defendant Ortiz, Grissom, Frazier and Tucker have created a pattern,
practice and custom to deny prisoners access to medical care when needed in
order to save money;

b.   Defendant Ortiz, Grissom, Frazier, Tucker, upon information and
belief operate on a custom, practice, and pattern that inmates feign all their
medical conditions and regularly, arbitrarily, and capriciously deny recommend
treatments to inmates, including access to proper medical examinations by qualified
medical professionals in the community to save money while allowing and causing
those inmates to suffer in pain and agony;

c.   Defendants Ortiz, Grissom, Frazier have created a pattern, practice
and custom of misleading, and providing misleading information on administrative
remedies about the denial of medical care to conceal the inadequate care being
provided to federal prisoners and lack of adequate medical personnel.

d.   These practices, custom and pattern of Grissom, Ortiz, Tucker and
Frazier has resulted in inmates being denied care when needed.

22

COMMON LAW TORT CLAIMS
AGAINST UNITED STATES OF AMERICA UNDER FTCA

COUNT I:  ASSAULT AND BATTERY

120.  Plaintiff realleges paragraphs 1 - 119 as if set forth fully herein.

121.  This claim is brought pursuant to 28 U.S.C. § 2671, et seq.

122.  The United States is responsible for the acts of their agents, officers, servants and employees under the doctrine of respondeat superior.

123.  The actions of Officer T. Brown constitute assault and battery in violation of New Jersey common law.  Under the FTCA, the defendant United States of America is liable to the Plaintiff for the unlawful actions of Officer T. Brown as he was acting within the scope of his employment as a law enforcement officer of the United States.

COUNT II:  MALICIOUS PROSECUTION

124.  Plaintiff realleges paragraphs 1 - 123 as if set forth fully herein.

125.  Defendant Brown, Tucker, Frazier, Grissom, Ortiz and others acting in concert with others did at the time and in the manner set forth above prosecute the plaintiff maliciously.

126.  Defendant Brown, Tucker, Frazier, Grissom, Ortiz and others were responsible for the institution or continuance of the falsely issued incident report and the disciplinary actions against Plaintiff and ultimately led to placement in the SHU.

127.  The incident report and disciplinary action, SHU proceeding instituted and continued against the Plaintiff were wholly without legal or probable cause, were instituted and continued with malice, and the proceeding as far as the disciplinary hearings and appeal was terminated in favor of Plaintiff.

128.  As a result of the malicious prosecution, Plaintiff suffered extreme pain, suffering during the malicious prosecution.  As a further result, Plaintiff

suffered severe and mental axiety and distress, as well as severe pain and sustained brain injury during the duration of the malicious prosecution, and continuing for an extended period of time afterward. As a further result of the malicious prosecution, Plaintiff is suffering and will continue to suffer for the rest of his lifetime from the mental distress, and damages sustained, which will, in turn cause him future loss earnings and restrict his opportunities to hold respected and trust positions in his employment and community.

129. As a result of the injuries and loss set forth, Plaintiff seeks compensatory and punative damages as a result of his malicious prosecution.

130. The actions of Brown, Tucker, Frazier, Grissom, Ortiz and Potter set forth constitute malicious prosecution in violation of New Jersey common law. Under the FTCA, the Defendant United States of America is liable to the plaintiff for the unlawful actions of Brown, Tucker, Frazier, Grissom, Ortiz and others as they were acting within the scope of their employment as law enforcement officers of the United States.

## COUNT III: NEGLIGENCE

131. Plaintiff re-alleges paragraphs 1 - 130 as if set forth fully herein.

132. The Defendants owe a duty of care and protection pursuant to 18 U.S.C. § 4042.

133. The actions of Brown constitute negligence in violation of New Jersey Common law. Brown had a duty to protect Plaintiff from injuries. Brown breached his duty when he assaulted and committed battery upon Plaintiff. This breach of duty constitute negligence in violation of New Jersey common law. Under the FTCA the Defendant United States is responsible and liable to the plaintiff as he was acting within the scope of his employment as a law enforcement officer of the United States.

## MEDICAL CARE - NEGLIGENCE

134. Plaintiff re-alleges paragraphs 1- 133 as if set forth fully herein.

135. The Defendants owe a duty of care and to provide medical assistance

23

as if a prisoner was receiving care in the community.

136.  The actions of Chigoze, Fletcher, Martin, Frazier, Tucker, Grissom, Wilks, Turner, Evans consitute negligence in violation of New Jersey common law. Chigozie, Fletcher, Martin, Frazier, Tucker, Grissom, Wilk, Turner and Evans had a duty to obtain or alert others that Plaintiff was in need of immediate medical care from when the assault occurred until the first instance when he was taken to be examined by outside professionals.

137.  Chigozie, Fletcher, Martin, Frazier, Tucker, Grissom, Wilks, Turner, and Evans breached their duty when the left Plaintiff to continue to suffer from the agonizing pain and injuries without bare minimum medical care.  They further breached their duty when the failed to provide prescribed medications and supplies and prolonging plaintiff's continued suffering without actions between January 20 through January 30, 2018.  The breach of their duty consitute negligence in violation of New Jersey common law and was the direct and proximate cause of the plaintiff's pain and suffering.  under the FTCA the Defendant United States of America is liable to the plaintiff for the unlawful actions of Chigozie, Fletcher, Martin, Frazier, Tucker, Grissom, Wilks, Turner and Evans as they were acting within the scope of their employment as law enforcement officers of the Untied States.

COUNT IV:  Negligent Supervision, Hiring, Training

138.  Plaintiff re-alleges paragraphs 1 - 137 as if set forth fully herein.

139.  Should it be determined that Ortiz, Grissom, Wilk, Turner, Tucker and Frazier was acting outside the scope of their employment at the time that they allegedly committed the acts, Plaintiff submits the following claims of negligent supervision, alternatively if they were acting within the scope of their employment, Plaintiff submits the following claim under respondeat superior.

140.  Defendeants Ortiz, Grissom, Wilk, Turner, Tucker and Frazier had a duty to protect plaintiff from being unlawfully assaulted, battery committed upon him and maliciously prosecuted by other staff and were required to properly train, hire, supervise Byrd, Chigozie, Fletcher, Martin, Meredith, Giordano, Brown, Evans and Potter.

24

141.   Defendants Ortiz, Grissom, Wilk, Turner, Tucker and Frazier failed to supervise the staff despite having knowledge of their propensity to engage in misconduct and other illegal acts, including assaults, malicious prosecution and retaliation.

142.   Defendants have never trained Byrd, Chigozie, Fletcher, Martin, Meredith, Giordano, Brown, Evans and Potter not to illegally threaten, inimtimdate, retaliate, maliciously prosecute prisoners, or withhold delivering medical care and aid when needed.

143.   Defendent knew about Ortiz, Grissom, Wilk, Turner, Tucker and Frazier and should have known that allowing them to work unsupervised would result in them threatining, intimidating, retaliating, assaulting, committing battery, and maliciously prosecutying prisoners in violation of federal regulations and BOP policy.

144.   As a result of Ortiz, Grissom, Wilk, Turner, Tucker and Frazier breaching their duty, Plaintiff was maliciously prosecuted, retaliated against, assaulted, battery committed upon him, denied access to medical care after repeated requests, left to suffer in pain and agony.

145.   The actions of Ortiz, Grissom, Wilk, Turner, Tucker and Frazier set forth constitute negligent supervision, hiring, traning and retention in violation of New Jersey common law. Under the FTCA, the Defendant United States of America is liable to the plaintiff for the unlawful acts of Ortiz, Grissom, Wilk, Turner, Tucker and Frazier as they were acting within the scope of their employment as law enforcement officers of the United States.

146.   Plaintiff suffered injuries and damages as a result of the unlawful acts of Ortiz, Grissom, Wilk, Turner, Tucker and Frazier.

### CONSTITUTIONAL CLAIMS AGAINST INDIVIDUAL OFFICERS UNDER BIVENS
### FREEDOM OF THE PRESS / SPEECH

147.   Plaintiff realleges paragraphs 1-146 as if set forth fully herein.

148.   Plaintiff had a right to receive publications from publishers while housed in the special housing unit.

149. Defendants Frazier, Tucker violated Plaintiff's First Amendment right when they refused to provide him his publications including his prison litigation manual, and other magazines and newspapers where BOP policy permits inmates to receive such materials.

150. The actions of Frazier, and Tucker violated Plaintiff's rights under the First Amendment and are liable to the United States for their illegal acts.

COUNT V:   RETALIATION UNDER THE FIRST AMENDMENT

151. Plaintiff realleges paragraphs 1-150 as if fully set forth herein.

152. On or about April 27, 2018 Plaintiff filed prison grievances via a BP 8 regarding Officer Giordano threatining him and his misconduct.

153. As a result of the grievance submitted, Lt. Tucker, Officer Brandon and Officer Giordano retaliated against the plaintiff by trashing Plaintiff's room starting on April 30 based on the filing of the prison grievances.

154. It was misconduct for Unit Manager Byrd to lose Plaintiff's grievance to cover-up and protect Officer Giordano. Byrd knew that Giordano, Tucker would trash plaintiff's room to deter him from filing further grievances.

155. It was misconduct and violation of Plaintiff's First Amendment right for Tucker to constinually trash plaintiff's room for filing prison grievances.

156. As a result of Plaintiff engaging in filing prison grievances, officer Giordano, Lt. Tucker, trashed Plaintiff's room, his legal work and other property as a means to deter him from filing prison grievances violates his First Amendment right to see redress.

COUNT VI:   EIGHT AMENDMENT  - FAILURE TO PROTECT

157. Plaintiff realleges paragraphs 1-156 as if fully set forth herein.

158. Defendant's Grissom and Ortiz was aware and should have known that Officer Brown posed a serious threat to the prisoners at Fort Dix based on other misconduct reported against him. Despite knowing the danger Brown posed

a serious risk, they took no actions to remove him and others.

159. Defendant's Grissom and Ortiz knew that Plaintiff and others was at risk of being attacked by Brown based on similar complaints, yet did nothing to prevent it from happening.

160. As a result of Grissom and Ortiz's inactions, plaintiff's rights under the Eighth Amendment - Failure to protect was violated.

COUNT VII: EIGHT AMENDMENT - EXCESSIVE FORCE

161. Plaintiff re-alleges paragraphs 1 - 160 as if fully set forth herein.

162. The actions of Defendant Brown in using physical force against the Plaintiff without need or provocation were done maliciously and sadistically and constituted cruel and unusual punishment in violation of the Eighth Amendment.

163. Plaintiff in no way instigated, caused, or contributed to the complained of conduct.

COUNT VIII: EIGHTH AMENDMENT DELIBERATE INDIFFERENCE TO
SERIOUS MEDICAL NEEDS

164. Plaintiff re-alleges paragraphs 1-163 as if fully set forth herein.

165. After Plaintiff was assaulted and taken to medical for examination, no care was provided to plaintiff, he was simply placed in the SHU.

166. Between January 20, 2018 through January 30, 2018 Plaintiff repeatedly submitted requests, made staff aware of by verbally advising them that he was suffering in pain and agony from the injuries as a result of the assault and battery by Officer Brown, despite all these pleas, Plaintiff was simply ignored.

167. The refusal of Defendants Chigozie, Martin, Fletcher, Turner, Wilk Tucker, Evans, Frazier and Ortiz to not provide any medical care, refer the matter to outside medical, or to prescribe any medication for the injuries was wanton, reckless, sadistical, malicious and in violation of the Eighth

27

PRAYER FOR RELIEF:

WHEREFORE, Plaintiff prays the Court grant the following relief:

A.   Issue a declaratory judgment stating that:

1.   The physical abuse, assault and battery committed upon Plaintiff violated his rights under the Eighth Amendment as the use of excessive force and constituted assault and battery under New Jersey common law.

2.   Defendants Ortiz and Grissom failure to take action to curb physical abuse of inmates violated the Plaintiff's right under the Eighth Amendment and consituted an assault and battery under New Jersey common law, as well as negligence and negligent supervision.

3.   Defendants Martin, Fletcher, Evans, Turner, Chigozie, Wilk, Evans, Ortiz, and Grissom in failing to provide any medical care for the Plaintiff after sustaining his injuries violated the Plaintiff's rights under the Eighth Amendment and consituted negligence in violation of New Jersey common law, as well as negligence and negligent supervision, negligent hiring training.

4.   Defendant Meredith, Giordano, Tucker, Frazier, Grissom and Ortiz violated Plaintiff's First Amendment right not to be retaliated against for filing grievances and constituted negligence and negligent supervision in violation of New Jersey Common law.

4.   Defendant Meredith, Giordano, Tucker, Frazier, Grissom and Ortiz violated Plaintiff's right to not be maliciously prosecuted based on false charges, and consituted negligence, negligent supervision, and malicious prosecution in violation of New Jersey Common law.

5.   Defendant Meredith, Giordano, Tucker, Frazier, Grissom and Ortiz violated Plaintiff's right under the First Amendment to the Press/ Speech by withholding his litigation manual, magazines and other publications, and constituted negligence, negligent supervision in violation of New Jersey Common Law.

28

B.  Award Damages, Costs of litigation

1.  As to the claims of Assault and Battery by Officer Brown, Plaintiff aks the Court to enter judgment against Defendant United States of America.

2  As to the claims of Negligence, negligent Supervision, Malicious Prosecution, the Plaintiff asks the Court to enter judgment against Defendant United States of America and to hold the United States of America liable to the plaintiff for compensatory damages.

3.  For the injuries that the plaintiff suffered as a result of the claims of Eighth Amendment excessive use of force, the Plaintiff asks the Court to hold Defendants United States of America, Officer Brown, Ortiz, Grissom, Tucker and Frazier jointly and severally liable for compensatory damages of this action.

4.  For the claim of Eighth Amendment excessive use of force, the plaintiff asks the Court to hold Defendant Officer Brown, Ortiz, Grissom, Tucker and Frazier as supervisors further liable for punative and exemplary damages.

5.  For the claim of Eigth Amendment deliberate indifference, the plaintiff asks the Court to hold Defendants Martin, Fletcher, Evans, Turner, Chigozie, Wilk, Evans, Ortiz and Grissom jointly and severally liable for punative damages, and the United States liable for compensatory damages.

6.  For the claim of First Amendment retaliation, the plaintiff asks the Court to hold defendants Meredith, Giordano, Tucker, Frazier, Grissom and Ortiz jointly and severally liable for punative damages and the United States liable for compensatory damages.

7.  For the claim of First Amendment freedom of speech/press, the plaintiff asks the Court to hold the United States liable for compensatory damages and Defendants Meredith, Giordano, Tucker, Frazier, Grissom and Ortiz jointly and severally liable for punative damages.

29

C.  Award plaintiff costs of this suit including litigation costs.

D.  Award damages for future care management, disability for residual injuries, and continued supportive care;

E.  Grant Plaintiff any other relief that is just, equitable and proper.

F.  Permit Plaintiff to amend the complaint if necessary.

G.  Issue an injunction ordering Defendants Ortiz,Grissom, and Tucker or their agents/ successors to:

a.  immediately arrange for the plaintiff to have a full consultation with an outside specialist regarding his options for care, pain and injuries that he continues to suffer from;

b.  full examination by a qualified physician;

c.  immediately arrange for plaintiff to have any surgies, treatment plans or other relief recommended by consultant and or qualified physician with expertise in the treatment and restoration and function of the right side of Plaintiff's head and eye socket.

d.  carry out without delay the treatment directed by such medical practitioner.

H.  Expunge the incident reports that resulted from the retaliation.


Dated:  May 1, 2019

                                        Respectfully submitted,

                                        Kevin T. Baldwin
                                        Reg #15185-016
                                        LSCI Allenwood
                                        P O Box 1000
                                        White Deer, PA 17887

I declare the foregoing to the true and correct to the best of my knowledge and belief under penalty of perjury pursuant to 28 U.S.C. § 1746.

30

Mr. Kevin Baldwin 15185-016
LSCI ALLENWOOD
Po Box 1000

White Deer, Pa. 17887



↶15185-016↷
Clerk Of Us District Court
PO BOX 2797
4TH AND Cooper ST. Rm1050
Camden, NJ 08101
United States

