# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

KEVIN T. BALDWIN,

    Plaintiff,

v.

OFFICER T. BROWN, et al.,

    Defendants.

Civ. No. 18-16213 (RBK) (AMD)

**OPINION**

**ROBERT B. KUGLER, U.S.D.J.**

Before the Court is the moving Defendants Evans, Tucker, Frazier, Ibe (pleaded as "Chigozie"), Fletcher, Martin, Turner, Wilk, Ortiz, and the United States of America's (hereinafter "Defendants") motion to dismiss Count IV(a)[1] of the Amended Complaint ("Complaint") pursuant to Rule 12(b)(1), and to dismiss Count VIII for failure to state a claim under Rule 12(b)(6). Plaintiff filed an Opposition, (ECF No. 51.), and Defendants filed a Reply, (ECF No. 56.). For the following reasons, the Court will grant in part Defendants' motion to dismiss. The Court will dismiss Count IV(a) and dismiss Count VIII as to all Defendants except Defendant Ibe.

---

[1] Defendants state that they are moving to dismiss Count IV(b), but both parties appear to be referring to Count IV(a), Plaintiff's FTCA claim for negligent supervision, hiring, and training. As discussed in the Court's earlier Opinion:

> Plaintiff's FTCA claim for negligent medical care is unnumbered and will be referred to as Count IV. Therefore, the Court shall refer to the FTCA claim for negligent, supervision, hiring and training as Count IV(a) and the unnumbered *Bivens* claim for violation of Plaintiff's First Amendment right to freedom of speech as Count IV(b). The remainder of the counts will be referred to by the numbers assigned in the amended complaint.

(ECF No. 17, at 4–5.)

## I. BACKGROUND

As the parties are intimately familiar with the facts of this case, and because the Court has already set forth the background of this matter in earlier Opinions, (ECF Nos. 10, 17), the Court will only set forth the background necessary to address the instant motion.

As set forth in the Court's earlier Opinion:

> Plaintiff was incarcerated at FCI Fort Dix when the following events took place. (Compl., ECF No. 1, ¶III.4.) On January 20, 2018, Officer T. Brown pulled Plaintiff out of his bed and repeatedly punched Plaintiff in the face, hit him in the right side of the head with a flashlight, and choked Plaintiff until he lost consciousness, in front of ten inmate witnesses. (Id., ¶V.17-20.) Photographs and video were taken of Plaintiff's injuries in Health Services, where P.A. Chigozie examined Plaintiff. (Id., ¶¶21-22.) Plaintiff was placed in segregated confinement "without proper adequate medical care." (Id., ¶23.)
>
> On January 21, and again on January 23, 2018, Plaintiff sent medical requests to P.A. Chigozie, complaining of extreme pain in the head and face and blurry vision. (Id., ¶¶24.) Plaintiff did not receive a response. (Id.) Plaintiff was not taken to Health Services until January 25, 2018, at which time his head was x-rayed. (Id., ¶26.) On January 26, 2018, Plaintiff told Officer Evans and G. Martin that he needed medical attention for extreme head and face pain with numbness. (Id., ¶¶27-30.) That same day, Plaintiff told Dr. Turner that he felt like his head was going to explode. (Compl., ECF No.1, ¶V.31.) Dr. Turner told Plaintiff he would be taken to "outside medical" but he would have to wait. (Id.)
>
> On January 29, 2018, Plaintiff told Captain Frazier he was in in excruciating pain on the right side of his head and asked for medical care. (Id., ¶32.) Captain Frazier told Plaintiff to be patient. (Id.)
>
> On January 30, 2018, Plaintiff told Officer Evans that he could not take the pain any longer. (Id., ¶33.) Officer Evans did not contact the medical department and instead told Plaintiff "call me when you die." (Id.) Later that day, Plaintiff told Lieutenant Tucker he was in pain, and Tucker said she would notify "Medical" but "Medical" never came. (Id., ¶34.) The same day, Plaintiff told A.W. Smith that he needed "outside medical care." (Id., ¶35.) Plaintiff also complained to E. Fletcher about his head and face pain and

numbness. (Id., ¶36.) Fletcher made caustic remarks about Plaintiff's request for medical attention. (Id.)

On January 31, 2018, Plaintiff was examined by Fort Dix Health Services staff members and then escorted to Robert Wood Johnson Hospital for a CT scan. (Id., ¶¶37, 38.) Dr. Gojaniuk diagnosed Plaintiff with Post-Concussion Syndrome and hypertension, and prescribed medication. (Compl., ECF No. 1, ¶¶V.38-39.)

On February 2, 2018, Plaintiff told G. Martin that he was still in pain and he had not received the medication prescribed by Dr. Gojaniuk for Post-Concussion Syndrome. (Compl., ECF No. 1, ¶V.40.) Martin walked away. (Id.) The next day, Martin told Plaintiff he had contacted Robert Wood Johnson Hospital but they were giving him the run around. (Id., ¶41.) On February 4, 2018, Plaintiff told Captain Perez that he had not received his medication and that he was dizzy and his vision was blurry. (Id., ¶42.) Perez said he would contact Health Services. (Id.) Later that day, Officer Evans refused to deliver Plaintiff's request to Dr. Turner. (Id., ¶43.)

On February 5, 2018, Plaintiff gave Lt. Tucker a medical request form, seeking medical care from Dr. Turner. (Id., ¶¶44-45.) Tucker confirmed that someone from Health Services would see him. (Id., ¶45.) Plaintiff did not see Dr. Turner until the next day, and Plaintiff received the medication prescribed by Dr. Gojaniuk. (Id., ¶46.) On February 7, 2018, Plaintiff was examined by Dr. Feignbutz, who prescribed sunglasses for Plaintiff's blurry vision and a topical NSAID for his eyelid discomfort. (Id., ¶48.)

On February 22, 2018, Plaintiff complained to G. Martin that his symptoms had worsened and no one had responded to his request forms. (Compl.,, ECF No.1, ¶V.49.) Martin told Plaintiff that Dr. Turner had his request forms and was trying to figure out what to do. (Id.) The following day, Plaintiff complained to G. Martin that he had not received the eye medication and sunglasses prescribed by Dr. Feignbutz. (Id., ¶50.) Plaintiff received the sunglasses on February 27, 2018. (Id., ¶51.)

On March 1, 2018, Plaintiff requested the eye drops Dr. Feignbutz had prescribed, and he received the eye drops the following day. (Id., ¶¶52, 54.) Plaintiff complained about his pain to Captain Frazier on March 1 and again on March 8, 2018. (Id., ¶¶53, 56.) Captain Frazier told him he had to wait. (Id.) In the meantime, on March 2 and March 8, Plaintiff sent Dr. Turner requests for outside medical treatment due to pain and numbness in his head and face. (Id., ¶¶55, 57.)

> On March 26, 2018, Plaintiff attended a neurological evaluation at St. Francis Center, and Dr. Taboda [] diagnosed Post-Concussion Syndrome and hypertension and recommended an EEG and brain MRI. (Id., 57.)
>
> ….
>
> On April 25, 2018, Plaintiff asked Health Services Staff why he had not received his eye medication prescribed on March 12, 2018. (Id., ¶63.) Plaintiff received the medication the next day. (Id.)
>
> . . . .
>
> Plaintiff complained of severe head pain to G. Martin on May 4 and 5 and requested that Dr. Turner order outside medical attention. (Id., ¶¶70-71.) Plaintiff was taken to Saint Francis Center for an EEG on May 8, 2018. (Id., ¶72.) Upon his return to Fort Dix that day, he was taken to the SHU without a medical check-up. (Id.)
>
> On May 16, 2018, Plaintiff submitted a medical request to Health Administrator J. Wilk, complaining of head pain, dizziness and blurry vision. (Id., ¶75.) Plaintiff had an MRI later that day. (Id., ¶76.)
>
> Plaintiff was transferred to FDC Philadelphia on May 17, 2018. (Compl., ECF No. 1, ¶V.78.) Plaintiff requested medical attention on May 19, 2018. (Id., ¶79.) On August 3, 2018, Plaintiff was taken to Saint Francis Center, were Dr. Taboda again diagnosed "Chronic Post-Concussion, HTN, and Depression." (Id., ¶81.) Dr. Taboda also recommended a cervical MRI. (Id.) Plaintiff underwent the cervical MRI on September 26, 2018, and it showed disc bulging and stenosis. (Id., ¶¶82-85.) Dr. Taboda prescribed Atorvastatin, Propranolol, Lisinopril and Sertraline "due to Plaintiff's brain and spinal injury." (Id., ¶87.) Plaintiff continues to suffer head, neck, eye and face pain, and he feels confused, unfocused and dizzy, with blurry vision and stagnant speech and thought processes. (Id., ¶¶88-97.)

(ECF No. 10, at 4–10.)

### A. Federal Tort Claims Act ("FTCA") Procedural History

For the purposes of the FTCA, Plaintiff filed two administrative claims regarding the events above. First, in March of 2018, Plaintiff submitted a Small Claim for Property Damage or

4

Loss form ("March 2018 administrative claim") to the Bureau of Prisons ("BOP") Regional Office. In that claim, Plaintiff detailed Defendant Brown's attack and alleged that he lost several items of property while at the Special Housing Unit ("SHU"). (ECF No. 43-3, at 16–26.) Plaintiff did not, however, mention the negligent hiring, training, or supervision of BOP employees and did not identify any supervisors in that claim. (*Id*.) On October 3, 2018, the Regional Office denied the March 2018 administrative claim. (*Id*. at 29.)

Next, in April of 2018, Plaintiff filed an SF-95 administrative tort claim, seeking $1,000,000.00 in damages ("April 2018 administrative claim"). (ECF No. 43-3, at 31.) In that claim, Plaintiff repeated his allegations regarding Defendant Brown's January attack. (*Id*.) Plaintiff also alleged that he was denied medical treatment for eleven days after the assault, until he was transported to the hospital on January 31, 2018. (*Id*.) Once again, Plaintiff did not mention the negligent hiring, training, or supervision of BOP employees, and did not identify any supervisors in that claim. (*Id*. at 31–32.)

### B. Prison Litigation Reform Act ("PLRA") Procedural History

With regard to the PLRA, Plaintiff pursued three sets of administrative grievances relevant to this case.

#### 1. First Grievance – Remedy ID 932231-F1

In February of 2018, Plaintiff submitted an administrative grievance, Remedy ID 932231-F1 ("First Grievance"), alleging: (1) that Defendant Brown assaulted him on January 20, 2018; (2) seeking an expungement of the disciplinary reports related to the attack; (3) detailing his inadequate medical care in the following weeks; and (4) requesting transfer to an outside medical center. (ECF No. 43-3, at 50–52.) The BOP rejected that grievance as untimely but accepted that his allegations were serious and that the BOP would investigate them. (*Id*. at 53.)

5

In April of 2018, Plaintiff appealed to the Regional Office. (*Id*. at 55.) In the appeal, Plaintiff repeated his allegations regarding the assault but did not include any allegations as to his medical care in the following weeks and months. Plaintiff did, however, allege that he "was placed in segregated confinement without medical attention." (*Id*.) The Regional Office responded that his allegations remained under investigation. (*Id*. at 56.)

Thereafter, Plaintiff appealed to the BOP Central Office. Plaintiff reiterated his claims about the assault, but made no mention of his subsequent medical care, mentioning only that he "was placed immediately in segregated confinement without medical attention." (*Id*. at 58.) In July of 2018, the Central Office denied Plaintiff's appeal, finding that Defendant Ortiz and the Regional Office had "adequately addressed" Plaintiff's claims, and that the allegations against Defendant Brown remained under review. (*Id*. at 59.)

### 2. Second Grievance – Remedy ID 935104-F2

In March of 2018, Plaintiff submitted an administrative grievance contending that staff were denying him access to publications while at the SHU. The grievance did not address Plaintiff's medical care. (*Id*. at 39.) Defendant Ortiz denied the grievance, and Plaintiff did not appeal. (*Id*. at 42.)

### 3. Third Grievance – Remedy ID 935189-F2

After submitting the First Grievance, but before his first appeal to the Regional Office, Plaintiff submitted his Third Grievance on March 24, 2018. (*Id*. at 44.) In his Third Grievance, Plaintiff specifically alleges that staff were deliberately indifferent to his medical needs after the January 20, 2018, attack. (*Id*.) In particular, Plaintiff contends that he was transported to an outside hospital on January 31, 2018, after eleven days of "pleading for medical attention and treatment that went unanswered." (*Id*. at 44.) Additionally, Plaintiff details the numerous ways staff delayed

or denied his medical treatment in the following months, until the date of the grievance, March 24, 2018. (*Id*. at 44–45.)  On May 10, 2018, Defendant Ortiz denied this grievance. (*Id*. at 46–48.) Plaintiff did not appeal the denial. (*Id*. at 4, ¶14.)

### 4. Remaining Procedural History

Plaintiff filed suit in this matter in November of 2018 and filed the operative Complaint on May 9, 2019. (ECF Nos. 1, 13.)  After screening the Complaint, this Court allowed Counts I, III, IV, IV(a), IV(b), VII, and VIII to proceed, dismissed Count II with prejudice, and dismissed Counts V and VI without prejudice. (ECF No. 17, at 14.)

In the instant motion, Defendants seek to dismiss Count IV(a) and Count VIII.  In Count IV(a), Plaintiff raises an FTCA claim based on negligent supervision, hiring, and training. (ECF No. 43.)  In Count VIII, Plaintiff raises medical deliberate indifference claims as to all Defendants. Defendants contend that Plaintiff failed to exhaust Count IV(a) under the FTCA and that he failed to exhaust the Count VIII under the PLRA.  Plaintiff filed an Opposition, and Defendants filed a Reply. (ECF Nos. 51, 56.)

## II.   STANDARDS OF REVIEW

### A. Rule 12(b)(1) Motions to Dismiss

Under Rule 12(b)(1), an attack on subject matter jurisdiction may be either a facial or a factual attack. *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008).  A facial attack "concerns an alleged pleading deficiency whereas a factual attack concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *Id.* (internal quotation marks omitted) (alterations omitted).

In a facial attack, "the court looks only at the allegations in the pleadings and does so in the light most favorable to the plaintiff." *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*,

473 F.3d 506, 514 (3d Cir. 2007) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).  In a factual attack, "it is permissible for a court to review evidence outside the pleadings." *Id.* (citing *Gould Electronics, Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

Defendants have presented this Court with a factual attack, as they contend that the facts of the case preclude this Court from exercising subject matter jurisdiction.  In a factual attack, plaintiff's allegations do not enjoy the presumption of truthfulness. *CNA*, 535 F.3d at 139; *Mortensen*, 549 F.2d at 891.  Plaintiffs bear the burden of persuasion to establish jurisdiction, and the Court may make factual findings beyond the pleadings that are decisive to determining jurisdiction. *CNA*, 535 F.3d at 145; *Atkinson*, 473 F.3d at 514.

### B. Rule 12(b)(6) Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted.  When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).  In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, a court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675).  Second, the court should identify

8

allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.*

"When deciding a motion to dismiss, a court typically does not consider matters outside the pleadings." *Bermudez v. Blue Cross & Blue Shield of New Jersey*, No. 19-21637, 2020 WL 4188159, at *2 (D.N.J. July 21, 2020) (internal quotation marks omitted). "However, a court may consider documents that are 'integral to or explicitly relied upon in the complaint' or any 'undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" *Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 372 (D.N.J. 2019) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999)).

"Reliance on these types of documents does not convert a motion to dismiss into a motion for summary judgment," since a "plaintiff obviously is on notice of the contents [of] the document, and the need for a chance to refute evidence is greatly diminished." *Mills*, 406 F. Supp. at 372 (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196–97 (3d Cir. 1993) (internal quotation marks omitted)).

### III. DISCUSSION

#### A. Count IV(a) and FTCA Exhaustion

First, Defendants move to dismiss Count IV(a), Plaintiff's FTCA claim based on negligent supervision, hiring, and training. Defendants contend, under Rule 12(b)(1), that this Court lacks jurisdiction to hear this claim because Plaintiff failed to exhaust his administrative remedies under the FTCA.

Generally, the "FTCA operates as a limited waiver of the United States['] sovereign immunity." *White–Squire v. U.S. Postal Serv.*, 592 F.3d 453, 456 (3d Cir. 2010) (citation omitted). Under the FTCA, the United States is liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. An incarcerated FTCA plaintiff may sue only the United States, may seek only monetary damages, and may not recover for mental or emotional damages in the absence of physical injury. *See* 28 U.S.C. § 1346(b)(1)–(2); *CNA*, 535 F.3d at 138 n.2.

A plaintiff suing under the FTCA must present the offending agency with notice of the claim, including a "sum certain" demand for monetary damages. *See White–Squire*, 592 F.3d at 457. "Because the requirements of presentation and a demand for a sum certain are among the terms defining the United States['] consent to be sued, they are jurisdictional." *Id.* An agency's final denial of the tort claim is a jurisdictional requirement. *Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009). These requirements cannot be waived. *See, e.g.*, *White–Squire*, 592 F.3d at 457.

With regard to the level of specificity in an administrative claim, plaintiffs "need not propound every possible theory of liability," but "a plaintiff cannot present one claim to the agency and then maintain suit on the basis of a different set of facts." *Roma v. United States*, 344 F.3d 352, 362–63 (3d Cir. 2003) (quoting *Deloria v. Veterans Admin.*, 927 F.2d 1009, 1011–12 (7th Cir.1991)). Stated differently, notice under the FTCA is sufficient "if the claimant (1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) places a value on his or her claim." *Id.* (quoting *Tucker v. United States Postal Serv.*, 676 F.2d 954, 959 (3d Cir. 1982)). A plaintiff asserting an FTCA claim bears the burden of establishing

10

that he has met these requirements. *Livera v. First Nat. State Bank of New Jersey*, 879 F.2d 1186, 1195 (3d Cir. 1989).

In the present case, Defendants appear to acknowledge that Plaintiff submitted two administrative claims[2] to the BOP, and that they contained a discrete claim and a request for a sum certain. Defendants argue, however, that the administrative claims failed to put the BOP on notice of any potential claim for negligent hiring, training, or supervision. (ECF No. 43-2, at 23.)

As discussed above, Plaintiff's March 2018 administrative claim detailed Defendant Brown's attack and alleged that he lost several items of property while at the SHU. (ECF No. 43-3, at 16–26.) In this claim, Plaintiff did not mention the negligent hiring, training, or supervision of BOP employees, and did not identify any supervisors. (*Id.*)

Similarly, in Plaintiff's April 2018 administrative claim, Plaintiff repeated the allegations against Defendant Brown and alleged that he was denied medical treatment for eleven days after the assault. (ECF No. 43-3, at 31). Once again, Plaintiff did not mention the negligent hiring, training, or supervision of BOP employees and did not identify any supervisors. (*Id.* at 31–32.)

Under similar circumstances, "the Third Circuit has held that an administrative tort claim alleging negligence and an administrative tort claim alleging negligent training or supervision are distinct and must be alleged separately for the District Court to have jurisdiction under the FTCA." *Coleman v. United States*, No. 15-1942, 2016 WL 1241800, at *4 (D.N.J. Mar. 30, 2016) (citing *Davila-Bajana v. Sherman*, 278 F. App'x 91, 94 (3d Cir. 2008) ("Davila-Bajana ... never

---

[2] Plaintiff appears to have conflated FTCA exhaustion and PLRA exhaustion. (ECF No. 51, at 15.) As to FTCA exhaustion, Plaintiff may only rely on his March 2018 and April 2018 administrative *claims*. Plaintiff's references to his February 19, 2018, administrative First *Grievance*, go to PLRA exhaustion. With regard to FTCA exhaustion, the BOP was under no obligation to review Plaintiff's administrative grievances. *See, e.g.*, *West v. Shultz*, No. 12-1004, 2014 WL 1668093, at *9 (M.D. Pa. Apr. 24, 2014) (discussing how PLRA and FTCA administrative exhaustion are two separate and distinct inquiries).

11

initiated an administrative claim alleging negligent implementation of policy and/or employee training. Therefore, the District Court properly found that it lacked jurisdiction to hear this claim.").

Similarly, in a case involving inadequate medical care and negligence, this Court held that it lacked "jurisdiction to hear Plaintiff's claim of negligent hiring, training, [and] supervision" under the FTCA, "because Plaintiff's administrative tort claim only alleged negligence." *Coleman*, 2016 WL 1241800, at *4.

The Court is aware that other district courts have allowed negligent training and supervision claims to survive despite the absence of explicit allegations in their administrative claims. *See Parker v. United States*, No. 18-8674, 2019 WL 2636620, at *8 (D.N.J. June 27, 2019); *Weiner v. United States*, No. 13-02849, 2014 WL 7404135, at *6 (E.D. Pa. Dec. 30, 2014).

Nevertheless, the Court finds that the weight of authority requires an administrative claim to contain some reference to hiring, supervision, or training, to place an agency on notice of such claims. *Davila-Bajana*, 278 F. App'x at 94; *Coleman*, 2016 WL 1241800, at *4; *see also Barnes v. United States*, 707 F. App'x 512, 516 (10th Cir. 2017) (affirming summary judgment as the plaintiff failed to include even a "cursory mention" of training or supervision in her FTCA claim); *Doe A.I. v. United States*, No. 16-2627, 2020 WL 59861, at *5 (D. Kan. Jan. 6, 2020); *Wilson v. United States*, No. 17-528, 2018 WL 794711, at *2 (W.D. Okla. 2018).

Accordingly, as Plaintiff's administrative claims made no reference to hiring, training, supervision, or any related terms, the Court finds that they were insufficient to put the BOP on notice to investigate such claims. As a result, Plaintiff has not met the FTCA's jurisdictional

requirements as to these claims, and the Court will dismiss Count IV(a) with prejudice, for lack of jurisdiction. *See Coleman*, 2016 WL 1241800, at *4.[3]

### B. Count VIII and PLRA Exhaustion

Next, Defendants move to dismiss Count VIII, Plaintiff's medical deliberate indifference claims, arguing that Plaintiff has failed to exhaust his administrative remedies under the PLRA. For the delay or denial of medical care to rise to a constitutional violation, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Courts have found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197.

The PLRA, codified as 42 U.S.C. § 1997e, precludes prisoners from contesting prison conditions in federal court until exhausting "all avenues of relief available to them within their prison's inmate grievance system." *Spruill v. Gillis*, 372 F.3d 218, 227 (3d Cir. 2004). Specifically, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

---

[3] Since the Court intends to dismiss these claims for failure to exhaust, the Court need not address Defendants' arguments under the discretionary function exception.

13

The "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Coulston v. Glunt*, 665 F. App'x 128, 132 (3d Cir. 2016).

A plaintiff must pursue to completion all available administrative remedies, even if they are not "plain, speedy, and effective," do "not meet federal standards," or could not result in the requested relief. *Porter*, 534 U.S. at 524. The prisoner must "carry the grievance through any available appeals process" in order to successfully exhaust his claim. *Camino v. Scott*, No. 05–4201, 2006 WL 1644707, *4 (D.N.J. June 7, 2006) (citing *Spruill*, 372 F.3d at 232).

These requirements serve three important functions: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 761–62 (3d Cir. 1996).

Failure to exhaust is an affirmative defense, and as such, defendants have the burden to plead and prove that a plaintiff has failed to exhaust. *Small v. Camden Cty.*, 728 F.3d 265, 268 (3d Cir. 2013). To determine whether a prisoner has exhausted his administrative remedies, the Court looks to the agency's applicable grievance procedures and rules, in this case, the BOP. *See Jones v. Bock*, 549 U.S. 199, 218 (2007).

The BOP Administrative Remedy Program, 28 C.F.R. § 542.10 *et seq.*, provides for review of inmate grievances at the institutional, Regional, and Central Office levels. Inmates must first present grievances informally, and then if dissatisfied with the informal resolution, the inmate must submit a written administrative remedy request. 28 C.F.R. §§ 542.13–542.14. If the inmate is not

14

satisfied with the Warden's response, he may appeal to the Regional Director, and then to the Central Office, General Counsel. 28 C.F.R. § 542.15(a). An appeal to the Central Office is the final administrative appeal. *Id*. The Central Office shall respond to the final appeal within 40 calendar days, and if the inmate receives no response within that time, he may consider it a denial. 28 C.F.R. § 542.18.

The Third Circuit has not addressed the issue of the required level of specificity in a grievance but has noted that "[t]he primary purpose of a grievance is to alert prison officials to a problem." *Williams v. Beard*, 482 F.3d 637, 640 (3d Cir. 2007). This language has led this and at least one other Court in this District to find "that a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Turner v. Doe*, No. 15-5942, 2016 WL 7341708, at *3 (D.N.J. Dec. 19, 2016) (quoting *Olivares v. United States*, No. 07–3476, 2010 WL 5251429, at *4 (D.N.J. Dec. 16, 2010)), *aff'd sub nom. Turner v. Scott*, 781 F. App'x 47 (3d Cir. 2019).

With those principles in mind, the Court finds that Plaintiff has failed to exhaust most of his medical deliberate indifference claims. At the outset, Plaintiff appears to raise claims as to two distinct sets of events under Count VIII. (ECF No. 13, at 28–29.) First, Plaintiff contends that immediately after the assault, Defendant Ibe examined, photographed, and videotaped Plaintiff's injuries but did not treat him prior to placing him in the SHU on January 20, 2018. (*Id*. at 9–10, 28.)

Second, Plaintiff maintains that he sought medical treatment for eleven days after the attack, but that various Defendants ignored him until finally taking him to a hospital on January 31, 2018. (*Id*. at 10–12, 29.) Moreover, Plaintiff contends that various Defendants delayed or denied medical treatment on numerous occasions from February of 2018 through May of 2018. (*Id*. at 10–18.)

15

As discussed above, Plaintiff pursued three sets of administrative grievances in this case, but only completed his administrative appeals as to the First Grievance. In his First Grievance, Plaintiff alleged that: (1) that Defendant Brown assaulted him on January 20, 2018; (2) sought an expungement of the disciplinary reports related to the incident; (3) detailed his inadequate medical care in the following days and weeks; and (4) requested transfer to an outside medical center. (ECF No. 43-3, at 50–52.)

After receiving a denial, Plaintiff appealed to the Regional Office, but did not include any allegations as to his medical care in the days, weeks, or months, after the assault. (*Id*. at 55.) Plaintiff did, however, allege that he "was placed in segregated confinement without medical attention [by Defendant Ibe]." (*Id*.) Likewise, in Plaintiff's appeal to the Central Office, Plaintiff reiterated his claims about the assault, but made no mention of his medical care in the following days, weeks, and months, mentioning only that he "was placed immediately in segregated confinement without medical attention [by Defendant Ibe]." (*Id*. at 58.) Consequently, the Court finds that Plaintiff has only exhausted his medical deliberate indifference claims as to Defendant Ibe.

More specifically, Plaintiff alleges that Defendant Ibe, a medical professional, thoroughly examined Plaintiff's serious injuries, and then placed him into the SHU without medical attention. (*Id*. at 9–10, 28.) In other words, Defendant Ibe could have known of Plaintiff's "need for medical treatment but intentionally refuse[d] to provide it," or could have otherwise prevented Plaintiff from receiving needed treatment. *Rouse*, 182 F.3d at 197. Accordingly, the Court finds that these

16

allegations are sufficient to state a claim for deliberate indifference and will deny Defendants' motion to dismiss Count VIII as to Defendant Ibe.[4]

The Court arrives at a different conclusion as to Plaintiff's medical deliberate indifference claims after his placement into the SHU, *i.e.*, after January 20, 2018. In his First Grievance, Plaintiff detailed the denials and delays of his medical care in the days and weeks after January 21, 2018. (ECF No. 43-3, at 50–52). He did not, however, include any of those allegations in his appeals to the Regional or Central Office. (*Id.* at 55, 58.) Similarly, although Plaintiff listed his medical claims in his Third Grievance, he never appealed the denial of that grievance. (ECF No. 43-3, at 39, 42.) Accordingly, Plaintiff failed to exhaust his medical deliberate indifference claims after January 21, 2018.

In his Opposition, Plaintiff emphasizes that he listed many denials and delays in his medical care in his First Grievance. (ECF No. 51, at 28.) In essence, Plaintiff appears to argue that this grievance was enough to place the BOP on notice as to these claims. (*Id.*) Plaintiff, however, misses the point, as he must place the BOP on notice *and* present each claim at each level of appeal. Tellingly, in his Opposition, Plaintiff does not substantively address the contents of his appeals to the Regional and Central Offices.

Consequently, without presenting those claims through each level of appeal, Plaintiff deprived the BOP of the opportunity to correct its own errors or grant the relief requested, which could have conserved judicial resources. *See Moscato*, 98 F.3d 757 at 761–62 (listing the policy reasons for PLRA exhaustion).

---

[4] Additionally, the Court will deny without prejudice Defendants' motion to dismiss based on qualified immunity as to Defendant Ibe. Defendants may renew their motion and adjust their arguments in consideration of the Court's findings as to Defendant Ibe.

Finally, Plaintiff appears to argue that his April 2018 administrative claim under the FTCA is sufficient to exhaust his claims under the PLRA. (ECF No. 51, at 28.) The Court rejects that argument. Exhaustion under the FTCA and the PLRA are "separate and distinct" and one is not a substitute for the other. *See, e.g.*, *West v. Shultz*, No. 12-1004, 2014 WL 1668093, at *9 (M.D. Pa. Apr. 24, 2014) ("Because of the mandatory exhaustion procedures under both the PLRA and the FTCA, and the separate purposes of these procedures with respect to the different claims, courts have consistently held that fulfillment of one exhaustion requirement does not satisfy the other."); *see also Cabot v. Fed. Bureau of Prisons*, No. 17-0710, 2018 WL 4291747, at *6 (M.D. Pa. Sept. 7, 2018).

Accordingly, for all of those reasons, Plaintiff has failed to exhaust his medical deliberate indifference claims after January 21, 2018, under the PLRA. As a result, the Court will grant Defendants' motion to dismiss as to these claims.

## IV. CONCLUSION

For the foregoing reasons, Court will grant in part Defendants' motion to dismiss. The Court will dismiss Count IV(a) and dismiss Count VIII as to all Defendants except Defendant Ibe. An appropriate Order follows.

DATED: March 23, 2021                    s/Robert B. Kugler
                                                                                                   ROBERT B. KUGLER
                                                                                                   United States District Judge